No. 11,433.

## NAUGLE ET AL. *v.* THE STATE, EX REL. BURTON.

EVIDENCE.—*Harmless Error.*—The admission of improper evidence is harmless, where it appears that there was other undisputed evidence given clearly proving the only fact upon which the improper evidence could have borne.

GUARDIAN AND WARD.—*Final Report.— Discharge.— Record.— Evidence.— Payment.*—A final report of a guardian showing a sum in his hands due the wards, with a prayer to be discharged, followed by an order approving the report and discharging the guardian, is no evidence that he paid the money.

SAME.—*Liability of Sureties.*—Where a guardian is discharged with money of the ward in his hands, which has never been accounted for or paid, and some years later is re-appointed, and thereafter accounts only for other moneys received during the second appointment, the sureties on the first bond are liable.

From the Monroe Circuit Court.

*J. W. Buskirk* and *H. C. Duncan,* for appellants.

*J. F. Morgan,* for appellee.

MITCHELL, J.—On the 1st day of October, 1870, Israel Naugle was duly appointed guardian of the minor heirs of Ellis Burton, deceased, and filed his bond to the approval of the clerk of the Monroe Common Pleas Court, with William Stuart as surety.

On the 3d day of September, 1883, the relator, one of the heirs of Ellis Burton, having attained his majority, brought this suit on the bond, assigning, among other breaches, that the appellant had failed to account for and pay over the moneys which had come to his hands from a pension to which the relator was entitled in virtue of the service and death of his father in the army.

The court found the facts specially, and stated as a conclusion of law thereon that there was due the relator the sum of $133, for which he had judgment.

1. It is argued that the complaint, to which a demurrer was overruled below, is bad, because it does not aver that the:

Robert W. Burton therein referred to is the relator, and the case of *Fee* v. *State, ex rel.*, 74 Ind 66, is relied on.

We think it fairly appears from the complaint that the relator and the Robert W. Burton mentioned in the body of the complaint is the same person. It can be gathered from its averments that the plaintiff's father, Ellis Burton, died in the United States service, and that a pension was allowed by the government to his minor heirs, and that Naugle was appointed guardian for " said minor heirs," among whom was one named " Robert W. Burton." As it may be presumed that the relator's father had but one child named Robert W. Burton, we may by that means arrive at the conclusion that the relator was the Robert W. Burton for whom Naugle was appointed guardian, and, by carrying that presumption through the complaint, identify him as the person therein referred to by that name.

2. We are also asked to determine the correctness of the ruling of the court in admitting in evidence, over the appellants' objection, an exemplified copy of the book of accounts of R. M. Kelley, U. S. pension agent at Louisville, Kentucky, showing the amount and dates of payments made by him as pension agent to the appellant Naugle.

Whether the certificate embracing a copy of the account, as it is alleged to appear on the books of the pension agent, was properly admitted is a question involved in some doubt. We are aware of no statute law or other public regulation which requires a pension agent to keep any such books of account or any other record of his official acts, as in *Wells* v. *State, ex rel.*, 22 Ind. 241. Yet, from the nature of the business conducted in those offices, it is doubtless necessary that some system of accounts should be and is prescribed or adopted for recording the particular transactions in books, which records are in a sense public. 1 Greenl. Ev., sections 483, 484. Without deciding the question whether this certificate was properly admissible in evidence or not, it is apparent from the whole record that its admission was harmless to the appellant.

The certificate from the pension agent shows that Naugle was paid on account of pensions for his wards, between the dates of July 19th, 1871, and September 9th, 1872, $444.54, and this comes within ninety-seven cents of the amount he charges himself with in the reports made by him to the court during his first period of service as guardian, which reports are properly in evidence. The certificate shows further that there was paid to Mr. Naugle on account of his ward's pension, on May 31st, 1877, during his second period of service as guardian, the sum of $330. That this last amount is correct is tacitly admitted by the appellant in his deposition, wherein he shows that during this period he paid of this sum $313 to his successor, Mr. Draper, whose receipts he exhibits, besides showing other disbursements made by him which more than account for the whole of it. As he is not charged with money accruing from any other source, and as he makes no denial of having received all that is charged from that in question, it results to a demonstration that he was not injured by the certificate of Mr. Kelley.

3. The appellant also complains of the ruling of the court in refusing to suppress the deposition of Herbert Edington, on account of the informality of the notice, but as the testimony given by Edington, and that given by the appellant Naugle, on the only point material to the inquiry, were in no way in conflict, but in substantial agreement, we need not determine whether the ruling of the court was correct or not.

4. As regards the letter of Mr. Naugle, written by him to Mr. Dunn, the relator's attorney, which was admitted in evidence over his objection, it may be said that while the writing of the letter was of questionable propriety, we think it was so far in the nature of a proposition for a compromise as that it ought not to have been admitted in evidence. It is the policy of the law to encourage the amicable adjustment of all controversies between citizens, and all communications and conversations which have that end in view are and should be protected. The letter in question, bearing upon its face

the manifest purpose of seeking a compromise, it should neither have been offered nor received in evidence. Aside from the letter, however, the reports and admissions of the guardian so abundantly establish the facts found by the court that it is again apparent that no injury came to him from its admission.

5. It appeared from the evidence, and it was also found as a fact by the court, that the appellant Naugle. resigned his trust as guardian on the 4th day of November, 1873, having in his hands, as shown by his final report, $108.36 belonging to his ward, Robert W. Burton. The report contained a particular account of his receipts and disbursements, and represented that his ward had gone to the State of Kentucky to reside, and that Herbert Edington had been duly qualified as his guardian in that State. It further contained a request that he might be allowed to pay the money over to Edington, take his receipt therefor, and upon filing the receipt be discharged. This report was confirmed and approved and the guardian discharged without it being made to appear in any way from the record whether the balance stated was ever paid over to Edington or not.

On the 23d day of March, 1877, Naugle was again appointed and qualified as guardian of the relator, and again he resigned on the 2d day of June, 1877.

During his second term he received the $330 above mentioned, and no more, all of which he disbursed properly, with $44.15 besides.

The only defalcation shown in the evidence, or found by the court, was the failure to pay over to Edington the $108.36 which was shown in his hands by his report when he resigned the first time. The court below found this sum, with the interest and penalty, less the $44.15 above mentioned, as the amount due, and for which he and his bondsman on his first bond were held liable.

It is now argued that the discharge from the first guardianship is conclusive in favor of his bondsman on the first bond,

so long as such discharge is allowed to stand unrevoked, and the case of *Candy* v. *Hanmore,* 76 Ind. 125, is relied on. That case, however, decides nothing more which is pertinent to the point under inquiry than that where, upon a final report made by a guardian in which he shows that he has paid out the balance in his hands to his ward, whose receipt is exhibited with the report, and upon which he is finally discharged, such discharge, while it stands, is not subject to collateral attack in a suit by the ward against the guardian. Conceding the authority of that case, as we do fully, it manifestly can have no influence on this. Here the report of the guardian shows on its face that he had in his hands undisbursed at the time of his discharge $108.36 belonging to his ward Robert W. Burton. He only asked to be discharged upon filing the receipt of Edington, and while it is true the record which follows immediately recites the approval of the report and the discharge of the guardian, it nowhere appears of record that the money was paid or the receipt filed.

That the court discharged him without requiring him first to pay over what his report shows was in his hands, does not amount to an adjudication that he had paid it over. There would be nothing to support such a judgment, as a judgment can never be more comprehensive than the relief asked for, and to which a party in his petition shows himself to be entitled. To prove that the $108.36 was not paid does not contradict the report or attack the judgment.

6. Finally, it is argued that the first bondsman is not liable for the amount remaining in the guardian's hands when he resigned the first time, that the $108.36 were assets on hand at that time, and that if any person is liable, it is contended, the liability is under the second bond for not accounting for this sum which remained in his hands. This contention is opposed to *Lowry* v. *State, ex rel.,* 64 Ind. 421, and a number of other cases.

The guardian was in default as soon as he accepted a discharge with the money in his hands without paying it over,

and the liability having attached it could only be discharged by payment. That he was appointed guardian a second time some four years later could in no manner affect it.

Judgment affirmed, with costs.

Filed April 2, 1885; petition for a rehearing overruled June 26, 1885.