The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

No. 15,401.

## THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY *v.* SPILKER.

RAILROAD.—*Railroad Crossing.—Injury.—Complaint for Damages.—Necessary Allegations.—High Rate of Speed.—When Negligence.*—In an action against a railroad company for damages because of injuries received at a railroad crossing, the complaint is sufficient which alleges, in substance, that defendant's train was running across a street in the city of Greenfield at a dangerous, reckless, and unusual rate of speed, fifty miles per hour, over and across the street where the injury occurred, where a great many persons were constantly passing, and where the plaintiff was injured without her fault, but by the fault and negligence of the defendant. The particular facts being sufficiently stated, it is the province of the jury to say whether the speed of the train at the street crossing, or its unusual character, or other facts and circumstances, were acts of negligence or not. And whether a given rate of speed is negligence or not must depend on the circumstances of each particular case.

SAME.—*Railroad Crossing.—Priority of Passage.—Care Required of Traveler and of Company.—Equal Rights.*—The right of priority of passage at a railroad crossing belongs to the railroad company; but, in other respects, the rights of the traveler and the rights of the company are equal; and neither has the exclusive right to the use

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

of the crossing, and both are required to use ordinary care to prevent a collision.

SAME.—*Railroad Crossing.—Dangerous Speed.—Negligence.*—Whether the speed of a train at a crossing is dangerous and negligent depends upon the circumstances, a high rate of speed being allowable in thinly settled parts of the country where but few persons would have occasion to cross, while, not to be dangerous, less speed is required through a city or village where crossing is more frequent.

SAME.—*Personal Injury.—Railroad Crossing.—When Negligence of Husband not Ascribed to Wife.*—Where, in approaching a railroad crossing, the wife, riding in the wagon with her husband, was under his protection and control, and because he was in control of the team, it does not follow that his negligence, if any, could be ascribed to her.

SAME.—*Railroad Crossing.—Rate of Speed.—City Ordinance.*—Regardless of a city ordinance, a railroad company is required to run its trains over frequented crossings in such a manner as to have due regard to the safety of the people who cross its track, the rate of speed to be guided by the circumstances of each case.

SAME.—*Duty to Look and Listen.—When Failure to See or Hear Train is not Negligence.*—It does not follow absolutely, and under every circumstance, that because a person could, by looking and listening, see a train, he is negligent in not seeing or hearing it, if there are surrounding circumstances that may prevent him from seeing or hearing.

VERDICT.—*General.—Answer to Interrogatories.*—That the general verdict and answers to interrogatories are not in irreconcilable conflict, see opinion.

EVIDENCE.— *Cross-Examination. — Explanatory Evidence. — Conversations.*—On cross-examination, where the witness was asked why he set his clock by the whistle of a train on a certain day, and to give reason why he remembered a particular circumstance, the answers to such interrogatories are not erroneous because among the circumstances related are words of conversation necessary to show why the memory of such act remains clear.

SAME.—*Personal Injury.—Declarations of Pain.—Admissibility in Evidence.*—In an action for damages because of personal injuries, it is competent to prove expressions of pain and suffering made by the injured person at the time of the pain and suffering, whether at the time or after the date of the injury, and it is immaterial whether such declarations or exclamations of suffering were made in the course of a conversation or not; but it would not be proper to give in evidence declarations by the injured party of past suffering.

SAME.—*State of Health Previous to and Subsequent to Injury.—How Proven.*—In such actions it is proper to prove, by physicians and

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

other witnesses, the conditions of health and strength both before and after the injury; and physicians may also state the conclusions they have formed from knowledge gained by examinations and observations.

SAME.—*Personal Injuries.*—*Inseparable Incidents to Accident.*—In such an action, it is not error, in adducing evidence, to mention in connection with such personal injuries, the death of another by the same accident, such fact being inseparably connected with the occurrence which caused the injuries complained of.

SAME.—*Physician and Patient.*—*Good Faith of Patient.*—*Complying with Directions of Physician.*—In such a case testimony was offered to the effect that the plaintiff took to her bed the second time, by the advice of her physician, intimating that plaintiff had tried to exaggerate her injury, and that the physician employed was incompetent. There being nothing to show that plaintiff acted otherwise than in good faith as to the injury sustained by her, it was proper for her to follow the advice of her physician, and such evidence was properly excluded.

SAME.—*Admission or Exclusion of.*—*When Harmless Error.*—The exclusion of competent testimony, or the admission in evidence of incompetent testimony, will not amount to reversible error where such exclusion or admission could not have harmed the complaining party.

SAME.—*Personal Injuries.*—*Employment of Physician by Defendant to Examine Injuries.*—The fact that a physician was emplyed by the defendant in an action for damages because of personal injuries, to make an examination of the plaintiff's injuries, that he might inform himself of the facts before testifying, may affect the credibility of his testimony, but does not make it incompetent.

SAME.—*Railroad.*—*Speed of Train at and Previous to Accident.*—Where the evidence in a case as to the speed at which a train was running at a certain time and place is conflicting, the rate at which the train was accustomed to be run at that place shortly prior to the happening of the event in issue may be given in evidence.

SAME.—*Railroad.*—*Notice of Circumstances Surrounding Crossing.*—In an action against a railroad company because of injuries received at a railroad crossing, it is not necessary for the plaintiff to prove that the defendant had notice of the circumstances surrounding the crossing.

INSTRUCTIONS TO JURY.—*Incompleteness of Instruction.*—An instruction to a jury is not bad because it is incomplete in its statement of the law, if it is completed by other instructions given.

SAME.—*Assumption of Fact.*—*When not Error.*—The assumption of a fact in an instruction is not error, where the fact is not controverted.

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

SAME.—*Fair Preponderance of Evidence.*—An instruction which stated, among other things, that the jury must be the judges of the fair preponderance of the evidence, is in this respect correct.

SAME.—*Modification of by Court.—Degree of Care.*—An instruction was asked in the following terms: That plaintiff, to avoid danger, should have exercised her senses as fully as possible. The court modified it so as to read: Should have exercised her senses as an ordinarily prudent and careful person. Such modification was necessary and right.

From the Wayne Circuit Court.

*C. H. Burchenal* and *J. L. Rupe,* for appellant.

*T. J. Study, C. G. Offutt, J. J. Rochford, E. Marsh* and *W. W. Cook,* for appellee.

HOWARD, J.—This action was begun in the Hancock Circuit Court, where appellee, as plaintiff, filed her complaint against appellant in two paragraphs.

The first paragraph charged, in substance, that on the 18th day of October, 1888, within the limits of the city of Greenfield, at a point where appellant's railroad crosses Stewart street, appellee's husband was lawfully attempting to drive his team of horses and wagon across the track of said railroad, when appellant's agents carelessly and negligently ran a locomotive engine and train of cars upon said team, demolishing the wagon and injuring appellee, who was seated in said wagon, by violently throwing her out against the wheel of the wagon and upon the ground, whereby she was bruised and injured in her limbs and back and internally, and that by reason thereof she has ever since been under the care of physicians and unable to help herself, and is permanently injured, maimed and crippled for life; that the train was running at a dangerous, reckless, negligent, and unusual rate of speed at the time it struck said wagon, at the rate of fifty miles an hour, and when approaching said crossing appellant's agents, servants, and

employes in charge negligently failed to give any signal or alarm by ringing the bell or blowing the whistle or otherwise, and never attempted to check or stop said train; that said injuries were caused by the careless and negligent acts of appellant as herein stated, and without negligence on her part or on that of her husband; that they were approaching said railroad track from the south, and that when they were within a short distance from said crossing, she and her said husband looked and listened, but that by reason of large and high piles of lumber, a saw-mill, and other obstructions on the south of and near and along the side of said track, they were unable to see, and that on account of the negligent failure of appellant to ring the bell or sound the whistle, they were unable to hear the approaching train by which she was injured. Wherefore she demanded judgment for $7,500 and other relief.

The second paragraph differs from the first principally by charging that appellant's agents in control of the train had wilfully and purposely run said train upon said team, etc.

A general denial was filed to the complaint, and, on motion of appellant, the venue was changed to Wayne county.

A third paragraph of complaint was filed in the Wayne Circuit Court. A demurrer to this paragraph was overruled, as was also a motion to make the paragraph more specific.

An answer in general denial being filed, the cause was submitted to a jury, and a verdict for $3,000 was returned for appellee. The jury also returned answers to certain interrogatories.

The errors assigned in this court are the following:

1. Error in overruling appellant's demurrer to the first and second paragraphs of the complaint.

The Chicago, St. Louis and Pittsburgh Railroad Company v. Spilker.

2. Error in overruling demurrer to the third paragraph of the complaint.

3. Error in overruling appellant's motion for a new trial.

4. Error in overruling appellant's motion for judgment in its favor on the special findings of the jury in answer to interrogatories, notwithstanding the general verdict.

5. Error in overruling appellant's motion to set aside the service of the summons and the sheriff's return on said summons.

6. Error in overruling the motion to strike out parts of the third paragraph of the complaint.

7. Error in overruling the motion to make the third paragraph of the complaint more definite and certain.

8. Error in overruling the motion to suppress certain parts of the depositions of James W. Lake, Sarah A. Lake, and Joseph A. Hamilton.

9. Error in overruling motion to suppress parts of depositions of Maria J. Wray, Stephen A. Ross, J. H. Payn, Samuel P. Gordon, and James Black.

Appellant discusses only a part of this list in the briefs filed. Several of the alleged errors also are improperly assigned as such; but as all such improperly assigned errors were given as reasons in the motion for a new trial, they are therefore properly in the record under the third assignment of error, the overruling of the motion for a new trial, under which assignment they will be considered, and not as independent assignments of error.

No ruling is shown in the record on the demurrer to the first and second paragraphs of the complaint, so that no question arises under the first assignment of error.

The second assignment of error is the overruling of the demurrer to the third paragraph of the complaint.

This paragraph charges, that within the limits of the city of Greenfield, at a point where appellant's track crosses Stewart street, appellee's husband was lawfully driving his team of horses and wagon across said track, when appellant, by her agents, carelessly and negligently ran her locomotive engine and train of cars upon said team, demolishing the wagon and injuring appellee, who was there lawfully seated in said wagon, by violently throwing her against the wheel of said wagon and upon the ground, whereby she was injured, etc.; that said train was running at a dangerous, reckless and unusual rate of speed, to wit, fifty miles an hour, at the time it struck said wagon and so injured her; that appellant's agents, when approaching said Stewart street crossing with said train, never attempted to check or stop the same, but carelessly, recklessly and negligently ran it at said dangerous, reckless, and unusual rate of speed of fifty miles per hour over and across said street where a great many persons were constantly passing and crossing; that said injuries to appellee were not caused by any negligence on her part.

In *Lafayette, etc., R. R. Co.* v. *Adams*, 26 Ind. 76, where "the train was running along a street of a populous village, and the track there was commonly used by the inhabitants as a footway," the court said: "The irresistible inference, therefore, is, considering all the evidence, that the speed was unusual, though not so much as twenty-five miles an hour, and that such a speed, in a place habitually used by foot-passengers, must be deemed inconsistent with any care for consequences to whoever happened to be in the way," and the court held that there was gross negligence amounting to recklessness.

The paragraph demurred to in the case now before the court charges that appellant's train was run across a

street in the city of Greenfield at a "dangerous, reckless, and unusual rate of speed of fifty miles per hour, over and across said street where a great many persons were constantly passing and crossing."

It would seem that the particular facts were sufficiently stated, and that it was the province of the jury to say whether the speed of the train at a street crossing such as stated, or its unusual character, or other facts and circumstances stated, were acts of negligence or not.

In the case of *Thompson* v. *New York Central, etc.,* R. R. Co., 110 N. Y. 636, the court said, of a like case: "It was at a crossing made by a public street, * * in a tolerably thickly populated part of the country, and it might well be a question for the jury whether the defendant was or was not, upon all the facts, guilty of negligence in running its train at the very great speed claimed, on the part of the plaintiff, through such a portion of the country. The giving of the signals required by law does not, under all the circumstances, render the defendant free from negligence if it ran its train at an undue and what might be found to be an improper and highly dangerous rate of speed through a village or city more or less densely populated."

It would seem that whether a high rate of speed is negligence must depend on the circumstances surrounding each instance.

In Elliott's Roads and Streets, page 606, it is said: "That in a populous city where signals can not be given it is the duty of the company to run its trains at such a rate of speed as not to put in jeopardy the safety of persons having a right to use the highways. It is obvious that where the streets of a large city are much used the high rate of speed allowable in rural districts will not be permissible, even in the absence of express State or municipal regulations."

The paragraph of the complaint which we are considering should be taken as a whole, and construed according to its general scope and tenor, and with a view to substantial justice between the parties, and when so considered, we think it will be found sufficient. Section 376, R. S. 1881; *Louisville, etc., R. W. Co.* v. *Jones*, 108 Ind. 551, and cases cited.

But the general averment alone, that "The defendant, by her agents, etc., carelessly and negligently ran her said locomotive engine and train of cars attached thereto upon them, demolishing the wagon and injuring the plaintiff," etc., is sufficient to withstand the demurrer, without stating the particular acts of negligence, which latter may be given in the evidence. *St. Louis, etc., R. W. Co.* v. *Mathias*, 50 Ind. 65, and cases cited.

The overruling of appellant's motion to strike out parts of the third paragraph of the complaint, and the overruling of the motion to make that paragraph more definite and certain, may be considered in this connection.

The ruling as to striking out parts of the third paragraph of the complaint is not discussed by appellant. The questions involved in the ruling as to making the paragraph more definite and certain have, perhaps, been sufficiently considered in what has been said on the overruling of the demurrer.

The substance of the charge of negligence in this paragraph is, that appellant ran her train at a reckless and unusual speed of fifty miles an hour, across a street in the city of Greenfield, where a great many persons were constantly passing and crossing; that those in charge of the train made no effort to check or stop the same, but ran it at that speed upon appellee, and injured her, without any negligence on her part. Appellant insists that this does not charge that appellant's servants saw appellee, or might have seen her, or that they knew, or might have

known, that people were passing over the crossing, or that the constant passing of people over the crossing was on that particular day, or that it was in a populous part of the city, or that the street was one much traveled. A complaint should allege facts sufficient to inform the defendant of the nature and character of the charges made, with a view to enable him to make a proper defense. A more minute and detailed statement of the facts of the case is both unnecessary and undesirable, making the pleading prolix and cumbersome.

In this case appellant was fully informed by the complaint of the facts charged as constituting negligence. That in which the negligence and carelessness of the appellant consisted seems to be definitely stated—the high rate of speed over a street of a city, where many persons were constantly passing, and without effort of those in charge of the train to abate its speed, and thus avoid the injury to appellee.

Whether these were facts was for the jury to determine from the evidence. Appellant admits that the rate of speed, in connection with the other circumstances of the case, may be considered in considering the issue of negligence, and we think that other circumstances are sufficiently stated to enable a proper defense to be made, which is all that is necessary.

In the motion for a new trial, the overruling of which is assigned as error, appellant claimed many errors as to admitting and refusing evidence, and giving and refusing instructions, which will be considered as they are presented.

On cross-examination by appellant, James W. Lake, a witness for appellee, was asked the following questions, and gave the following answers:

"Q. 21. Can you give the reason why you set your clock by the whistle of that train on that particular day?

A. 21. I can give the circumstances: The clock was a little slow, and I sat down by the window to watch for that train, as I knew it was about time for it to come, and when I went to set the clock I said to my wife that I wouldn't be surprised if that train was behind time, that I thought it was running faster than usual.''

''Q. 33. Can you give any reason why you remember this particular circumstance? A. 33. From the fact that I went to the toll-gate that evening to water my horses, and the gate-keeper told me there was a man killed down here on the road, and I made the remark to him that that train went through without whistling and was running very fast, and he asked me if I noticed the train as it went through. I told him that I did for the purpose of setting my clock.''

These answers, which are given to appellant's questions, and which are objected to by appellant, have both reference to the same matter, the setting of witness' watch by the arrival of the train. He was in both questions required to give the reason why he remembered the fact of setting his watch by the train, and his answers give the circumstances that fix the recollection of that fact in his mind, amongst which circumstances are words of conversations necessary to show why the memory of the setting of his watch by the train remains clear. The answers were given to supply the information which appellant himself had sought. Besides, even if parts of the answers were technically erroneous, they were not calculated to do appellant any harm.

The other alleged errors as to improper evidence, claimed by appellant in this connection, are not discussed in appellant's brief. They are of a trivial character.

The witness Maria J. Wray had testified, that appellee, before her injury, had done her own work; that she

did house-work and worked around for the neighbors; that she was at that time "a strong and stout woman, so far as I knew. She always had that appearance." And, on cross-examination, these questions and answers were had:

"Q. 21. Did you ever see her washing for the neighbors? A. 21. No, sir: she told me she did so, that is all the information I have."

"Q. 22. What personal knowledge have you of her doing her own work? A. 22. I never knew of her having a hired girl. She was always doing her own work when I was there."

It would seem that all this evidence, when taken together, could do the appellant no harm. The witness had stated what she knew of appellee's health and strength and of her work, and then gave the source and means of her information. It was for the jury to weigh the evidence thus given, and give it such credit as it was entitled to.

The answer to the following question was objected to as being a part of a conversation which witness had with appellee about two weeks after she was injured:

"If you had any conversation with her at the time you visited her, as stated in your answer to the last question, upon the subject of her injury, you may state what she said or what complaint, if any, she made of pain. Ans. I did have a conversation with her. She complained of her back and neck, and she said she felt like she was stove up all over."

It is competent to prove expressions of pain and suffering made by the injured person at the time of the pain and suffering, whether at or even after the date of injury, and it is not material that such declarations or exclamations of suffering were made in the course of a conversation. It would not be proper to give in evidence a

conversation with the injured party in which she related her past suffering or injury, by way of narrative, but it was proper for the witness to relate what appellee had said as to her condition, particularly of concealed or internal suffering, as it existed at the time the statements or exclamations of suffering were made. Otherwise it would often be quite impossible to prove such internal injuries. *Board, etc., v. Leggett*, 115 Ind. 544.

In *Werely v. Persons*, 28 N. Y. 344, where the plaintiff had been allowed, over objection, to prove that during a period of two months plaintiff had complained of his right side and said that he lay on his left side because it hurt him to lie on his right, the court held that the evidence had been properly admitted, although the witness was not a physician, and quoted from 1 Greenleaf on Ev., section 102, that when it is necessary to inquire as to the bodily or mental feelings of a party, the usual expressions of such feelings made at the time are in the nature of original evidence. See, also, *Carthage, etc., Co. v. Andrews*, 102 Ind. 138; *Cleveland, etc., R. R. Co. v. Newell*, 104 Ind. 264; *Louisville, etc., R. W. Co. v. Wood*, 113 Ind. 544.

The same observations will apply to the greater part of the evidence objected to under the ninth assignment of error. It was proper to prove, by physicians and other witnesses, the condition of health and strength before and after the injury, and to show the condition of appellee after the injury, both by describing her appearance, actions, symptoms, and by giving her own expressions of pain and suffering at the time. It was also proper for physicians to testify to knowledge obtained of her condition by their professional examinations and inquiries made of her for the purpose of treating her for her alleged injuries. Physicians may also state the conclusions at which they have arrived from knowledge gained

by such examinations and observations.    Se authorities cited, *supra*.

Certain evidence  given  by the witness  Jerome Black is objected to because it assumes that one David Casey was killed by the same collision which caused the injury to appellee, and it is said  that  this allusion  to  Casey's death was calculated to prejudice the jury in favor of appellee.    David Casey was sitting in the  same wagon  as appellee, and at the moment that the wagon was demolished Casey lost his life.   His death was the principal circumstance connected with the accident, and we do not see 'how it was possible, even if proper,  to  keep the knowledge of  this  circumstance from  the  jury.   One might almost as well  object to making  any remark concerning the demolition  of  the  wagon.   David Casey's death is mentioned  by several of  the witnesses;  it was inseparably connected with the accident, and a reference to him and his death could hardly be avoided.   But it was not necessary to avoid it.

Objection was  made  to  the  introduction of  testimony as to  the  location of the west line of the corporation. This is futile.   The  fact that the  accident  occurred at Stewart Street, in the city of Greenfield, is established by overwhelming evidence.

The evidence as to the exact location of the corporation limits  could not  materially affect  the  interests of appellant.

Appellant claims that the  court erred in  refusing to allow proof  by appellee that she took to her bed the second time by the advice of Dr. Payne, her physician, intimating that appellee and her husband had manifested a disposition to exaggerate her injury, and  that the physician employed was incompetent.  Even if this were shown it could not benefit appellant.

There is nothing to show that appellee acted otherwise

than in good faith as to the injury sustained by her, and it was certainly proper for her to follow the advice of her physician. Even if the physician were incompetent, but employed by her in good faith, and there was thus an aggravation of her injury without her fault, it would but tend to increase the liability of appellant. 3 Lawson Rights, Rem. and Pr., section 1029; *Collins* v. *City of Council Bluffs*, 32 Iowa, 324, 7 Am. Rep. 200; *Loeser* v. *Humphrey*, 41 Ohio St. 378.

It is claimed as error that the court sustained an objection to a question to appellee on cross-examination by appellant as to an examination made of her by Dr. Weist.

Appellee had said in partial answer to a question of appellant, on cross-examination: "Weist made slight examination of me that day; asked me to state my symptoms." The record then proceeds: "Defendant asked witness to state what statement she made to Dr. Weist, and nature of examination Weist made of her. Objected to by plaintiff, and sustained, excepted. Defendant offered to prove by witness that Weist made examination of her that day by Weist. Objection sustained, excepted."

This ruling was right, and no harm was done by it to appellant. Appellant does not inform the court what fact it was intended to prove by the question. The record merely says: "Defendant offered to prove by witness that Weist made examination of her that day." This she had already stated. Besides, the witness had not made any mention of Dr. Weist on her direct examination. The court may have sustained the objection to the question on account of the relation of physician and patient, but for whatever reason the ruling was made, it did appellant no harm. Dr. Weist himself fully testified to

The Chicago, St. Louis and Pittsburgh Railroad Company v. Spilker.

his examination of her, and of her statements then made to him.

Appellant claims that it was error to allow proof made by the city marshal, over objection, that the corporation line of the city of Greenfield was six hundred or seven hundred feet east of the point where the accident occurred. We have noticed a similar objection in case of another witness. Certainly it could not be objectionable to show how far the city extended east of the locality in question, and that the accident did in fact occur within the city, even if it was done for the purpose of showing that the rate of speed of the train at the place of the accident was excessively great. The chief negligence charged was the very high rate of speed of the train within the city, and at and across a street used by many of the people.

Dr. Kelsey, in testifying as to an examination of appellee made by him, in answer to a question of appellee, said: "She complained of great pain and feebleness, particularly in left side," and gave other testimony as to complaints of suffering made to him by her on such examination.

Appellant argues that such evidence was incompetent. We have already shown that such evidence as to expressions of present pain are competent, even if not made to a physician. *Board* v. *Leggett, supra,* and other authorities cited.

The fact that such physician was employed by appellee to make such examination to enable him to inform himself before testifying, may affect the credibility of his testimony, but it does not make it incompetent. *Matteson* v. *New York Central, etc., R. R. Co.,* 35 N. Y. 487; *Central R. R.* v. *Smith,* 76 Ga. 209, 2 Am. St. Rep. 31.

The same physician testified that he did not examine appellee specially for spinal concussion. He was then

asked what symptoms he had observed in her case that would indicate spinal concussion. In answer he stated the symptoms which he had observed in her case, which might indicate spinal concussion. There was no error in this. The fact that he did not have in mind a given disease at the time of his examination of appellee's physical condition did not make it improper for him to state certain facts and symptoms which he did observe in her, and which, as a physician, he knew might be indicative of the disease in question. It was for the jury to weigh the evidence so given.

Reuben A. Riley, a witness for appellee, gave the following testimony, which is objected to by appellant as incompetent: "Am acquainted with the manner in which the defendant was in the habit of running her vestibule train through Greenfield during the month of October, and prior to the 18th of that month. They ran those vestibule trains very rapidly. Don't think the speed with which they passed that street was less than forty miles an hour, and often sixty miles at that time. Have seen them run so fast that the train sucked up trash along the track, and even chickens."

We do not think this evidence prejudiced the case of appellant. The accident occurred on the 18th day of October. The question before the jury was whether the speed of the train on that day, at the time and place of the accident, was so great as to amount to negligence on the part of appellant. There was some variation in the evidence as to the exact rate of speed on that occasion. The evidence here objected to was by way of comparison, that by knowing how the vestibule train ran on other days about that time, particularly close before the day of the accident, the jury might have some aid in judging how fast the train did run on the day in question.

In the case of the *Ohio, etc., R. W. Co.* v. *Selby*, 47

The Chicago, St. Louis and Pittsburgh Railroad Company v. Spilker.

Ind. 471 (494–5), the court said: "Several of the witnesses, in attempting to fix the rate of speed at which the train was running at the time of the accident, spoke of the rate of speed at which other trains had been run both before and after the accident. * * * The real question was the rate of speed at which the train was running at the time of the accident. The evidence as to the speed of other trains was intended to illustrate the point under examination by comparison. We do not think the jury was misled by such evidence."

In the same case, and in speaking of the same evidence, BUSKIRK, C. J., says: "The court charged the jury that, in determining whether the train which met with the accident was running at a higher rate of speed than was safe and prudent, taking into consideration that portion of the track, they might consider the rate of speed at which other trains had been run over that portion of the road, both before and after the accident. We think this instruction was unobjectionably correct." *Ib.*, *supra*, at p. 495.

In the case of *Shaber* v. *St. Paul, etc., R. W. Co.*, 28 Minn. 103, the court said: "The rate of speed at which the engine was running was a contested point on the trial, the evidence of plaintiff tending to show that it was from twelve to fifteen miles an hour, that for defendant that it was not more than five. The plaintiff was permitted, under objection, to prove what was the customary rate of speed at which engines of defendant * * * ran for a considerable time prior to this accident. * * * Where the evidence is conflicting as to the speed in a particular instance, proof of the customary or habitual speed at which the engines of defendant ran under like circumstances may be given to show that the evidence for plaintiff, or for defendant, is the more probable." See, also, *Sheldon* v. *Hudson River R. R. Co.*, 14 N. Y.

218, and *Field* v. *New York Central R. R.* 32 N. Y. 339. That particular acts of negligence at other times may also be shown in evidence, see *Pittsburg, etc., R. W. Co.* v. *Ruby,* 38 Ind. 294, *et seq.*

The authorities given by appellant are not in point.

In *Ramsey* v. *Rushville, etc., Gravel Road Co.,* 81 Ind. 394, it was offered to prove that, within a few days of the time at which appellant's buggy was overturned, the witness, in driving a sleigh along the same road, met with a like accident from the same obstruction. The other cases are similar.

In the *Cleveland, etc., R. W. Co.* v. *Wynant,* 114 Ind. 525, plaintiff's team took fright at a box car, and evidence that other horses had "shied" at the same box car was held incompetent, as nothing appeared as to the disposition of the other horses, and some horses might be frightened by objects that would not affect other horses.

The case of *Western Union Tel. Co.* v. *Levi,* 47 Ind. 552, also cited by appellant, was one in which damages were claimed resulting from telegraph poles falling at a certain point, and it was held improper to prove the rottenness of poles at another point on the same line. The court, by WORDEN, J., said: "If in connection with this evidence there has been an offer to show that the poles alluded to by the witness and those which fell were all of one kind, and put up at the same time, and equally exposed to the elements, the evidence might have been competent, inasmuch as it might be inferred that like causes would equally affect like matters." If that case has any bearing on the case at bar, it would seem that the reasoning of the court is rather against than for appellant. These cases have very little in common with the case before us, which was as to evidence showing the rate of the same train, at the same place, at and close to and immediately before the date of the accident.

NOVEMBER TERM, 1892. 399

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

The evidence, under the circumstances, was competent to go to the jury to aid them in arriving at a correct estimate of the rate of speed of the train at the time of the accident. Besides, the evidence could have done appellant no harm. The jury found that the speed of the train was only from thirty-five to forty miles per hour, and there was abundance of other testimony to justify this finding, and evidence to show even considerably greater speed, and the actual rate of speed is not the question to be decided, but whether the speed at the time and place was such as to constitute negligence by appellant. *Gebhart* v. *Burkett,* 57 Ind. 378; *Naugle* v. *State, ex rel.,* 101 Ind. 284.

The instructions of the court given to the jury, nineteen in number, very fully state the law upon every phase of the case. Objections were made by appellant to the second, third, fourth, fifth, sixth, seventh, ninth, eleventh, twelfth, fourteenth, sixteenth, and seventeenth instructions, but only the fifth, sixth, seventh, and eleventh instructions are discussed in the briefs of appellant.

The objection made to the fifth instruction is that it does not state that the railroad train has the superior right of way as compared with a team on the highway. This is, however, substantially stated in other instructions given.

In the eighth instruction the jury are told that if appellee had any notice in any way of the approach of the train, and yet heedlessly drove upon the track without first apprising herself that she could cross in perfect safety, then she could not recover unless the injuries complained of were purposely inflicted by appellant.

We are of opinion that this sufficiently apprised the jury of the respective rights of the parties as to priority in going upon the crossing, "that the railroad company has the right of way, and the traveler must wait until

the train, the coming of which he knows, or ought to know, has passed." Elliott's Roads and Streets, p. 604.

It is not complained that any statement of law as given in the fifth instruction is incorrect, and as what is claimed to have been omitted is fully expressed in other instructions given, there is no error. The authorities quoted by appellant do not sustain its contention.

In the *Indianapolis, etc., R. R. Co.* v. *McLin*, 82 Ind. 435, the court says: "The obligations of railroads and travelers at intersecting highways are mutual. The same degree of care is required of each. 'For,' as said in the case of *Continental, etc., R. W. Co.* v. *Stead*, 95 U. S. 161, 'conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties.'" The right of priority of passage, "the right of way," belongs to the railway company; but in other respects the rights of the traveler and the rights of the company upon a crossing are equal. Neither has the exclusive right to the use of the crossing, and both are required to use ordinary care to prevent a collision. The instructions, when taken together, as they must be, are to this effect. *Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196; *Louisville, etc., R. W. Co.* v. *Phillips*, 112 Ind. 59; *Pennsylvania Co.* v. *Krick*, 47 Ind. 368; 1 Rorer on Railroads, p. 531.

The sixth instruction was a correct application of the law to the evidence. In it the jury were told that they must determine from all the circumstances whether the rate of speed of the train at the crossing was dangerous or unreasonably high; that a very high rate of speed might be allowable in a thinly settled part of the country, where but few persons would have occasion to cross the track, while the same rate of speed through a city or

village, where many persons had occasion to cross the track, might be dangerous, so as to constitute negligence. There was no error in this.

Instruction seven is objected to for the reason that it assumes that there was a collision. The fact of the collision was proved by both parties. It was not controverted. The court committed no error in assuming it as true.

Instruction eleven we regard as a very full and fair statement of the law as to appellee's right to recover, based upon the evidence as to her care in approaching the crossing. As to the omissions of the court complained of in this instruction, it is enough to say that they are fully covered in other instructions given to the jury. It was not necessary for the court to repeat instructions already given, or to give instructions that were to follow, and did follow, in other instructions given to the jury. The instructions were even more full and complete in detail than necessary. It does not appear that the jury were in any respect misled by the instructions.

Certain instructions were asked for by appellant, but refused by the court.

Instruction number two, as given by the court, more correctly expresses the law than does instruction number one, asked by appellant.

In the first and third paragraphs of the complaint, appellee claimed damages by reason of the negligence of appellant, appellee being, as claimed, free from negligence.

The instruction given by the court on this claim was: "To entitle the plaintiff to recover under either the first or third paragraphs of the complaint, it must appear from a fair preponderance of the evidence, not only that the injuries complained of were caused by the negligent

acts, or some of the negligent acts, of the agents, serv-
ants, and employes of the defendant, as charged, but that
she was herself free from all negligence contributing di-
rectly to said injuries." This is correct. The jury must
be the judge of the fair preponderance of the evidence,
and they are instructed that they must find accordingly.
This covers what is asked for by appellant, that "If from
the whole evidence in the cause the jury can not deter-
mine whether or not plaintiff was free from such negli-
gence, then it would be your duty to find for the defend-
ant." That would of course follow from a failure of the
preponderance of the evidence in favor of appellant's
negligence and appellee's freedom from contributory neg-
ligence. We must presume that the jury has intelligence
to understand the meaning of words, so that prolixity
and iteration of language is not only unnecessary, but is
objectionable.

Instruction number three, requested by appellant, is
more fully given in instruction number six, as given by
the court, except the clause charging that before there
could be a recovery by appellee it must be shown that
appellant had notice of the circumstances surrounding
the crossing. It is not necessary that such proof of no-
tice be made. The crossing is a part of appellant's own
roadway, over a public street in a city, across which the
agents and employes of appellant pass several times each
day. One can scarce believe that it could be seriously
contended that it was necessary to show that appellant
had notice of the condition and surroundings of so public
a crossing on its own right of way.

The sixth instruction, requested by appellant, is clearly
not the law. Because the wife, riding in the wagon with
her husband, was under his control and protection, and
because he was in control of the team, it does not follow
that his negligence, if he should be guilty of any, could

be ascribed to her.   Before his negligence could be imputed to her, it should appear that he was her agent, or was so united with her in a common enterprise, that his act became her act.   To make the instruction applicable the supposed facts should be reversed and he should be subject to her control and direction.   *Town of Knightstown* v. *Musgrove*, 116 Ind. 121;   *Brannen* v. *Kokomo, etc., Gravel Road Co.*, 115 Ind. 115;   *Nesbit* v. *Town of Garner*, 75 Iowa, 314;   *Hoag, Admx.*, v. *New York Central, etc., R. R. Co.*, 111 N. Y. 199;   *Robinson* v. *New York Central, etc., R. R. Co.*, 66 N. Y. 11;   *Dyer* v. *Erie R. W. Co.*, 71 N. Y. 228; *Masterson* v. *New York Central, etc., R. R. Co.*, 84 N. Y. 247;   *New York, etc., R. R. Co.* v. *Steinbrenner*, 47 N. J. Law, 161; *Borough of Carlisle* v. *Brisbane*, 113 Pa. St. 544; *Transfer Co.* v. *Kelly*, 36 Ohio St. 86.

In the case of *Hoag* v. *New York, etc., R. R. Co.*, *supra*, the court said: "If we assume, for the purposes of the argument, the negligence of the husband, who was driving, yet his negligence can not be imputed to his wife." The only question, in the opinion of the court, was whether she was herself guilty of negligence, citing *Platz* v. *Cohoes*, 26 Hun, 391, affirmed, 89 N. Y. 219; *Robinson* v. *New York, etc., R. R. Co.*, *supra*. See, also, *Louisville, etc., R. W. Co.* v. *Creek, Admr.*, 130 Ind. 139.

It is true that the authorities are not altogether in accord as to whether a driver's negligence in such case may be imputed to a passenger who has no control over him; but the more equitable rule, and the one followed by this court, is that such negligence can not be imputed to the passenger.

The seventh instruction, requested by appellant, that the appellee herself must show that she was not guilty of negligence, and did not simply rely upon the protection of her husband and his care, is fully given by the court

in its own instruction. Instruction twelve, given to the jury, included what was requested as to her relying on the husband's protection, or "because of the presence of her husband." *Stockton* v. *Stockton*, 73 Ind. 510; 1 Works' Prac. § 787, and cases cited, also § 793; *Beard* v. *Sloan*, 38 Ind. 128.

Instruction number twelve, requested by appellant, was to the effect that, because the city of Greenfield had an ordinance forbidding trains to be run in certain parts of the city, not including the place where the accident occurred, at a rate not exceeding twelve miles an hour, therefore in those parts of the city outside of the limits stated in the ordinance, the company might run its trains "at any rate of speed necessarily required by the business of the company." This is not the law. We think it has already been shown in this opinion that even without any regulation by ordinance or by statute, a railroad company is required to run its trains, particularly in cities and towns, and over frequented crossings, in such a manner as to have due regard to the safety of the people who cross its track, the rate of speed to be guided by the circumstances of each case. Even if a city ordinance should permit a very high rate of speed, that would not justify a rate of speed through the city that would be reckless or dangerous.

In *Meyer* v. *Midland Pacific R. R. Co.*, 2 Neb. 319, the court said: "It is doubtless true, even in the absence of a statutory regulation upon the rate of speed upon railroads within the thickly-settled portion of cities and villages, that a reasonable rate must be observed, which is to be determined from a due consideration of all the circumstances. A proper regard for the safety of the inhabitants and their property imperatively requires that this should be so." 1 Dillon Munic. Corp., paragraphs 319, 325, 326.

Appellant complains that two instructions requested, numbered five and thirteen, were modified by the court before being given. The words added in instruction numbered thirteen make that instruction more favorable to appellant. Instruction five requested the court to charge that appellee, to avoid danger, should "exercise her senses as fully as possible," but that the court modified this charge to read "exercise her senses as an ordinarily prudent and careful person." This was correct. It is ordinary, prudent care that must be exercised by both parties in avoiding collision.

The jury found a general verdict for appellee, awarding her damages in the sum of three thousand dollars, and also returned answers to eight special interrogatories asked by appellee, and to forty-three special interrogatories asked by appellant. The well known rule is that the general verdict will not be disturbed, unless there is an irreconcilable conflict between the facts found specially and the general verdict. If, therefore, when the facts here found in answer to the fifty-one interrogatories, when taken together, can be reconciled with the general finding, the latter must stand.

In answer to appellee's interrogatories, the jury found that on approaching the crossing appellee's husband, who was driving the wagon in which she was seated, stopped the wagon at a point sixty-four feet from the track, to enable him and appellee to look and listen for the train; that they did so look and listen to ascertain if any train was approaching, but did not see or hear any indications of an approaching train; that they soon thereafter drove carefully toward the track; that after they had reached a point where they could see both ways along the track, appellee looked carefully both ways along the track and listened for any train that might be approaching until the wagon and team were on the track; that

appellee did not see or hear the train before it struck the wagon, in time to avoid the collision, and that she was free from any contributory negligence.

In addition, the jury found, in answer to the remaining interrogatories, that the track of appellant runs east and west through Greenfield; that the appellee came upon Stewart street about sixty-four feet south of the track; that she was going north, and knew that she was approaching the track; that appellant's train was coming from the west; that the time was between three and four o'clock in the afternoon; that it was raining moderately; that there was a switch or side-track on the north side of the main track; that there was a freight engine and train of cars which had been standing on the side-track for fifteen or twenty minutes, and that the engine was about thirty feet east of the crossing, and making a slight noise by escaping steam; that appellant's track extended east and west in a straight line, and that a person upon the track could see a train approaching one mile west; that appellee and her husband were in possession of the senses of sight and hearing; that a building called Cox's mill, an abandoned saw-mill, was situated one hundred and one feet west of the crossing and twenty-seven and one-half feet south of the track; that north of this mill to the track there was no obstruction to the sight except the rain; that appellee, from a point fifty-three feet south of the track, if she had looked, could have seen a train two hundred or more feet west of the crossing; and that thirty feet south of the track, if she had looked west, she could have seen an approaching train seven hundred and thirty-seven feet west; that twenty-six and a half feet south of the track she could not see the train two thousand feet west; that appellee could not have seen appellant's train approaching if she had looked before going upon the track; that appellee, as she approached the

NOVEMBER TERM, 1892. . 407

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

track, if she had listened attentively, could not have heard the whistle or noise of the train in time to have stopped before going upon the track; that appellee was sitting beside her husband upon a spring seat, holding a raised umbrella over herself and her husband; that the team was gentle and manageable; that appellee did not say or do anything to dissuade her husband from going upon the track; that the point sixty-four feet south of the track was not the only point where appellee and her husband stopped to look and listen for the train, and that Cox's mill did not obscure the track from their view; that the team was moving about three miles an hour; that the agents of the appellant did not purposely run the train upon the wagon, but after seeing the wagon approaching the crossing, sounded an alarm whistle and put on the air-brakes; that the bell was rung for 2,025 feet west; that at the time the train struck the wagon the train was moving at the rate of thirty-five or forty miles an hour; that the whistle was not sounded for the station 2,025 feet west of the crossing, and was not sounded three times immediately afterwards; that twenty-five or thirty teams and thirty or forty footmen were accustomed to pass over the crossing every day.

Appellant contends that because appellee's and her husband's senses of sight and hearing were good, and because a person on the track at the crossing, if he had looked west, could have seen an approaching train one mile distant, or, when fifty-three feet south of the track, could have seen a train two hundred feet west of the crossing, or when thirty feet south of the track could have seen a train seven hundred and fifty-seven feet west of the crossing, and that because from the north line of Cox's mill to the track, a distance of twenty-seven and one-half feet, the view west was unobstructed, except from the rain, therefore the law will assume that appel-

lee did see the train. This would follow if there were no other facts found. The jury find that appellee and her husband stopped at two points south of the crossing to look and listen for the train, once at a point sixty-four feet south of the track, and once "after they had reached a point where they could see both ways along said track," appellee looked carefully both ways along said track, and listened for the train. This was a distance less than twenty-seven and one-half feet from the track, and the time occupied by the team in going from this last point upon the track, at the rate of three miles an hour, would be but six seconds.

The jury find that appellee looked both ways at this point. There is nothing to show that appellee, or her husband, knew which way a train might be expected, or whether a train might be due from the west any more than from the east. They were residents of the country, "some distance west from the city of Greenfield," as the complaint states; it was raining moderately, and there was a freight engine near the crossing, making some noise by escaping steam. The jury find positively, in answer to appellee's seventh interrogatory, that appellee did not see or hear the train as they approached the crossing before the wagon was struck, in time to avoid the collision.

There was evidence before the jury that the horses were on the track before appellee or her husband were aware of the approach of the engine, which then they saw at a glimpse to the left, just before it struck. In answer to appellant's thirty-second and thirty-third interrogatories, the jury find that not only at a distance of sixty-four feet from the track, but also at a point still nearer to the track, appellee and her husband stopped and listened for the train. And, in answer to appellant's twenty-seventh and twenty-eighth interrogatories, the jury find that be-

tween the mill and the track, a distance of twenty-seven and one-half feet, appellee, if she had looked and listened attentively, could not have seen or heard the train in time to have stopped before going on the track.

The cases relied upon by appellant in the motion for judgment on the interrogatories are not in point. *Cones* v. *Cincinnati, etc., R. R. Co.*, 114 Ind. 328; *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1; *Ohio, etc., R. W. Co.* v. *Hill, Admx.*, 117 Ind. 56.

In those cases the findings were simply that the train could have been seen if the plaintiff had looked for it; in the case at bar there are findings that appellee did look and listen, and did not see, and that she could not have seen or heard.

At most, the special finding, taking the interrogatories as a whole, would on this point be contradictory, and could not overthrow the general verdict. Nor does it follow absolutely, and under every circumstance, that because a person could, by looking and listening, see a train, he is negligent in not seeing or hearing it, if there are surrounding circumstances that may prevent him from hearing or seeing. The fact in this case that appellee, in the short space of twenty-seven and one-half feet, had to look both east and west, that it was raining, that an engine on the side-track was making noise by escaping steam, that the passenger train was coming at thirty-five to forty miles an hour, and the positive finding of the jury that appellee did not, and could not, see or hear the train in time to avoid the collision, quite overcame the finding that a person stationed at certain points on the street, and looking in a certain direction, could see the train.

In *Massoth* v. *Delaware, etc., Canal Co.*, 64 N. Y. Ct. App. 524, the court says: "It does not necessarily follow from the fact that a skilled engineer can demon-

strate that from a given point in a highway the track of a railroad is visible for any distance, that an individual in charge of a team approaching the track is negligent because he does not from the same point see a train approaching at great speed, in time to avoid a collision; and it is not enough to disturb a verdict of a jury in this court, in which legal errors only can be corrected, that the questions of fact are doubtful and that a different result might have been reached."

And, in *Parsons, Exx., v. New York Central, etc., R. R. Co.,* 113 N. Y. 355, the court says: "The jury were justified, from the evidence, in finding that he had looked in the direction in which he was walking and did not see the train. That he did not hear it is quite conceivable as the exhaust steam of the passenger engine made considerable noise. * * * Having once looked and seeing no train, he had a right to assume that none would be coming at such a rate of speed as would preclude him from crossing a single track. It is probably true that if he had looked both ways at the moment of stepping on the track, he could have seen the approaching train, but that might be said of almost every accident of a similar character, and is a degree of vigilance seldom adopted by any one, and would require the impossible fact of looking in opposite directions at the same time, or anticipating the point from which he was to be assailed. * * * The question is, whether the injured party, under all of the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances." And the court concludes that the jury could find that the injured party was free from negligence, citing *Terry, Admr., v. Jewett,* 78 N. Y. 338; *Brassell, Admr., v. New York Central, etc., R. R. Co.,* 84 N. Y. 241; *Archer v. New York, etc., R. R. Co.,* 106 N. Y. 589.

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

That when answers to interrogatories are contradictory, or not conclusive, the general verdict will stand, see *Kirkpatrick* v. *Reeves*, 121 Ind. 280; *Redelsheimer* v. *Miller*, 107 Ind. 485; *Hereth* v. *Hereth*, 100 Ind. 35; *Grand Rapids, etc., R. R. Co.* v. *McAnnally*, 98 Ind. 412; *Rice* v. *Manford*, 110 Ind. 596; *Smith* v. *Heller*, 119 Ind. 212; *Shoner* v. *Pennsylvania Co.*, 130 Ind. 170 .

We have now disposed of all the material questions discussed by appellant under the assignments of error. We may say, in passing, that, considering the time and labor necessarily bestowed by appellant upon the preparation of the transcript and briefs in this case, it seems strange that so little care has been given to any proper and sufficient means of reference to the record. The marginal notes required by rule thirty-one of the court are very meagerly supplied. There should be a marginal note on each page of the transcript indicating the matter to be found on that page; and, in the briefs, whenever any pleading, evidence or ruling of the court is referred to, the page and line of the transcript where it may be found should be given. Were this more fully done in this case much of the labor of the court occupied in searching the record could have been given to other matters pressing for attention. We have, however, carefully looked through the transcript for all references to the record, and have been able to discover no material error, or one for which the verdict of the jury in this case should be disturbed.

The judgment is, therefore, affirmed.

Filed Feb. 2, 1893.

## DISSENTING OPINION.

HACKNEY, J.—I can not concur in the opinion that the rate of speed of the train on the day in question can be shown by testimony of the speed of such train on other

The Chicago, St. Louis and Pittsburgh Railroad Company v. Spilker.

days. The condition of weather, the connection with other railway lines, and the character of the train as to the number of cars and the number of passengers carried necessarily establish a variant rate of speed. If a witness may state generally the speed of a train, as a rule, prior to the accident, each observation of the witness may be inquired into, and his several observations rebutted by testimony. Thus it will be seen that a collateral issue becomes a source of the most fruitful investigation before the jury. If the rate of speed as involved in the case of *Ohio, etc., R. W. Co. v. Selby*, 47 Ind. 471, was as to the safety of passengers or freight being hauled over a track in a particular condition, it is not in point here, because the rate of speed at which a train may be run as to its own safety or the safety of its passengers is materially different from the rate of speed at which it may be run as affecting the safety of others using a highway crossing.

Indeed it may, with some force, be contended that because the train ran at the rate of sixty miles habitually, and no one was injured until this occasion, it was not negligence to run at that rate on this occasion. The particular occasion, with all of the conditions attending it, should be the guide to the determination of the existence or nonexistence of negligence, and the jury should not be permitted to go astray upon the proposition that negligence may be inferred to-day from negligence yesterday. Nor can I conclude that such evidence is corroborative of the theory of the plaintiff that the speed was of a negligent rate to-day because, as the witness Riley testified, the train had run fast enough on another or other occasions, that the suction from its rapid passage took chickens, trash, and dirt after it.

OLDS, J., concurs with HACKNEY, J.

Filed Feb. 2, 1893.

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Spilker.

ON PETITION FOR A REHEARING.

HOWARD, J.—The appellant asks for a rehearing in this case, still insisting that the evidence given by the witnesses Reuben A. Riley, Jerome Black, and Dr. Kelsey was improperly admitted. The questions presented have already been fully considered by the court, except, perhaps, the additional reason, now more fully brought forward by appellant, why the testimony of the witness Riley should not have been received—that it was not good under the theory of the complaint.

The complaint charged that at the time of the accident the train was running across a street in the city of Greenfield at a "dangerous, reckless, and unusual rate of speed of fifty miles an hour over and across said street where a great many persons were passing and crossing." And appellant contends that the complaint thus "presents the cause of action upon the theory that the appellant was not in the habit of so running her trains, but that the rate of speed charged at the time of the accident was unusual."

We are of opinion that this is not a correct interpretation of the theory of the complaint. The negligence charged on this point is the running of the train over a street of a city, where many people were passing and crossing, at a dangerous, reckless, and unusual rate of speed of fifty miles per hour. That is, in effect, that fifty miles an hour, across a much frequented street of a city, is a dangerous, reckless, and unusual rate of speed. It is indeed a matter of common knowledge that such a rate of speed of trains in cities is extremely unusual, and always reckless and dangerous. We think that counsel for appellant misapprehended the force of the word unusual as used in the complaint.

We have found nothing in the able brief filed by ap-

pellant that would change the opinion already rendered. Indeed the verdict is amply supported without considering any of the evidence objected to.

The petition for a rehearing is accordingly overruled.
Filed May 17, 1893.