Filed January 31, 1896.

---

No. 16,558.

THE EVANSVILLE AND TERRE HAUTE RAILROAD CO. *v.* KRAPF, ADMR.

| 143 | 647 |
|-----|-----|
| 146 | 377 |

| 143 | 647 |
|-----|-----|
| ·150 | 403 |
| 151 | 619 |
| 152 | 618 |

| 143 | 647 |
|-----|-----|
| d157 | 224 |

| 143 | 647 |
|-----|-----|
| 165 | 580 |

| 143 | 647 |
|-----|-----|
| f166 | 266 |
| f166 | 665 |

PLEADING.—*Complaint.*— *Personal Injury.*— *Railroad Accident.*— *Death of Engineer.*—A complaint for the death of an engineer on a freight train—alleged to have been caused by a defective draw-bar and coupling appliances on one of the cars of another freight train, causing it to break apart and a section of the train to collide with his engine after both engines had been reversed upon discovering that the trains were approaching each other on the same track—is bad where it does not show that the engine attached to the colliding train was reversed in time to prevent a collision if the draw-bar and appliances had not been defective and the train had not broken in two.

SAME.—*Complaint.—Contributory Negligence.—Railroad Employe.*— A general averment in a complaint for the death of a railway employe, that his injuries were inflicted without fault or negligence on his part, sufficiently alleges the absence of contributory negligence to withstand a demurrer, where the facts alleged therein do not necessarily raise an inference of contributory fault.

SAME.—*Complaint.—Railway Accident.—Collision of Trains.—Negligence.*—A complaint alleging that defendant railway company while carelessly and negligently backing a train failed to provide a clear track for the train of a deceased engineer, or to take any precaution against injuring him by other trains, and carelessly omitted to provide a flagman or other means of warning him of the approach of any train, and that he was killed by the backing of the train at a high rate of speed against his engine, states a cause of action, although it does not recite all the facts and circumstances tending to show defendant's negligence.

RAILROAD.—*Inevitable Accident.*—The breaking without fault or negligence of a draw-bar and coupling-pins holding freight cars together, which were in good condition and apparently sound, caused by the momentum of the freight train upon the engine being reversed upon discovering the approach of another train with which a section of the train breaking apart collided, killing the engineer, who was in the employ of another company and then engaged in taking freight cars home to defendant's yards, is an inevitable accident for which defendant is not liable.

SAME.—*Accident.—Collision.—Negligence.—Contributory Negligence.* —One of two railway companies which daily takes each other's freight cars home to its yards, without either company taking any other precaution than to preserve a sharp lookout to prevent collisions, is not liable for the death of an engineer of the other company by a collision while he was bringing its freight cars home, which would not have occurred if it had exercised due precaution to keep a proper lookout and notify him of the approach of its train, where his own neglect to observe similar precautions proximately contributed to the accident.

From the Vigo Superior Court.

*Iglehart & Taylor,* for appellant.

*Eggleston & Hammond* and *McNutt & McNutt,* for appellee.

MCCABE, J.—This was a suit by the appellee against the appellant to recover damages on account of the

death of George J. Krapf, caused by the alleged negligence of appellant.

The complaint was in three paragraphs, a demurrer to each of which was overruled, and that ruling is assigned for error in this court. The first paragraph, omitting the formal parts, reads as follows: "That the decedent, George J. Krapf, on the 29th day of July, 1890, and for thirty-seven years prior thereto, was an employe of the Indianapolis and St. Louis Railway Company as an engineer, and on said day, and for a long time prior thereto, was employed as a switch engineer in the switching yards of said railway company in the city of Terre Haute, Indiana; that on said day, and for many years prior thereto, there was an agreement and contract for a valuable consideration between the said railroad company and the said defendant, the Evansville and Terre Haute Railroad Company, that all cars of defendant which should come into or be found in the yards of said Indianapolis and St. Louis Railway Company in said city should be delivered by said Indianapolis and St. Louis Railway Company to defendant in the switching yards of defendant in said city, and for said purpose the said Indianapolis and St. Louis Railway Company had the right and was accustomed, by the terms of said contract, to enter upon the land of said defendant at all hours; that pursuant to said agreement, on the day aforesaid, the decedent, by the direction of his employer, pulled a train of freight cars belonging to defendant from the yards of his employer to the yards of defendant for the purpose of delivering the same to defendant, the decedent acting at his post of duty as engineer of the engine attached thereto; that decedent run his said train into the said yards of defendant upon the main track thereof, as had been the custom to do theretofore, as he had a right

and as it was his duty to do, and at a speed of about four miles per hour; that upon the decedent's entering the yards of the defendant, the said defendant backed a long train of freight cars toward the train of decedent and upon the same track upon which the train of the decedent was moving, and defendant's train running at a speed of eight miles per hour; that decedent, seeing the said cars moving toward him, whistled for down brakes, signaled the approaching train to stop, and reversed his engine to stop his own train, and the engineer of defendant's train, upon receiving the signal, reversed his engine, whereupon a cut of seven cars broke loose from defendant's train, and, by their acquired momentum, ran into and against the engine of said decedent, who, remaining at his post of duty, was caught in the wreck between the cab and water tank of his engine and killed without fault or negligence upon his part, but by reason of the negligent conduct of defendant in this, to-wit: That defendant was carelessly and negligently using in its train aforesaid, at the time aforesaid, a defective and worthless car, with a defective and insecure draw-bar therein, and a defective key in said draw-bar, and that the timbers to which said draw-bar was attached were decayed and rotten and insufficient for that purpose; that defendant had carelessly and negligently constructed said car, and had carelessly and negligently suffered the same to become defective and out of repair, and had carelessly and negligently used and suffered the said defective car and defective coupling to be used in making up said train upon the day aforesaid, by reason of all of which facts, when defendant's engine was reversed, as aforesaid, the draw-bar in said defective car pulled out, the decayed timber of the car gave way, and the seven cars were

precipitated against the decedent, causing his death, as aforesaid."

It is contended that each of the paragraphs is bad, because the allegations are not sufficient to show absence of contributory negligence on the part of the appellee's decedent. To constitute a good cause of action for negligence resulting in a personal injury, two essential facts must be shown in the complaint as concurring, namely, that the injury was caused by the negligence of the defendant and the absence of contributory negligence on the part of the plaintiff; that is, absence of contributory negligence on the part of the plaintiff is as much a part of his cause of action as the presence of negligence on the part of the defendant. It is contended by appellant that there is nothing in either of the three paragraphs of the complaint to show that the appellant's backing train of freight cars was not in plain view of the deceased engineer, Krapf, in ample time to have enabled him to have stopped his train and avoided the collision, and thereby avoided all injury to himself; hence it is claimed that the absence of contributory negligence on the part of appellee's decedent is not sufficiently shown in the complaint. But each paragraph states that the injury was inflicted without the fault or negligence of the appellee.

In *Pittsburgh, etc., R. W. Co.* v. *Wright*, 80 Ind. 182, at page 184, this court said: "The averment that the plaintiff was without fault is of a technical character, and admits of any legitimate proof by which its truth can be established; and, as matter of pleading, it makes the complaint good in that respect, against all mere inferences of contributory negligence, unless the inference arises as a necessary legal conclusion from the facts stated." To the same effect are *Town of Rushville* v. *Adams*, 107 Ind. 475 (478); *Town of Salem,*

v. *Goller*, 76 Ind. 291 ; *City of Fort Wayne* v. *DeWitt*, 47 Ind. 391; *Evansville, etc., R. R. Co.* v. *Crist*, 116 Ind. 446 (449); *City of Franklin* v. *Harter*, 127 Ind. 447; *Ohio, etc., R. W. Co.* v. *Walker*, 113 Ind. 196; *Louisville, etc., R. W. Co.* v. *Stommel*, 126 Ind. 35 (37); *City of Elkhart* v. *Witman*, 122 Ind. 539 ; *Pennsylvania Co.* v. *O'Shaughnessy, Admr.*, 122 Ind. 588; *Louisville, etc., R. W. Co.* v. *Hanning, Admr.*, 131 Ind. 528; *Stewart, Admx.*, v. *Pennsylvania Co.*, 130 Ind. 242.

The facts alleged here do not necessarily raise any inference of contributory fault, and therefore do not overcome the technical allegation that the appellee was without fault on his part.   That allegation would admit proof that the deceased was in such a situation on account of obstacles or otherwise that he could not see the approach of appellant's train in time to avoid the collision and injury, and that he had no reason to anticipate the approach of such train.   We, therefore, hold that the several paragraphs of the complaint sufficiently show the absence of contributory negligence on the part of appellee's decedent.

It remains to inquire whether they, or any of them, sufficiently show negligence on the part of the appellant, causing the injury complained of.

The allegations of the first paragraph specifically confine the charge of negligence to the use of a car in the appellant's train which was alleged to be worthless with rotten timbers, to which was attached a defective and insecure draw-bar.

There is nothing in the first paragraph of the complaint showing that the alleged resultant injury was produced by the use of the alleged defective draw-bar and coupling appliances; that is, nothing to show that without such use the injury would not have occurred.

If the injury might have occurred just as it did without their use, then their use was not the proximate cause of the injury, and, therefore, their use in that event would not constitute actionable negligence.

The substance of the charge is that the appellant's train was being run backward, meeting the decedent's train, drawn forward on the same track at the rate of four miles an hour, and decedent on seeing appellant's train approaching backward at the rate of eight miles an hour, signaled it to stop; both engines were reversed, and the decedent whistled for down brakes, and that on the reversal of appellant's engine seven cars broke loose from appellant's train, and by their acquired momentum ran into and against the engine of said decedent, who, remaining at his post of duty, was killed. There is no showing whether the balance of the approaching train of appellant had its momentum checked so as to avoid the collision with decedent's engine in case there had been no breaking loose of the seven cars. For aught that appears in this paragraph of the complaint, the balance of the train was not sufficiently checked in its momentum to prevent it from colliding with decedent's engine. In other words, the facts stated in this paragraph do not inform the court whether the breaking of the draw-bar and coupling appliances made any difference in the disaster that happened. We are not informed by direct averment that the momentum of the balance of the train was in the least checked. We may infer that it was checked to some extent by the statement that upon the reversal of appellant's engine the seven cars broke loose. But that is a matter of mere inference or argument from the fact stated that upon the reversal of the engine the cars broke loose. Pleadings should state facts upon which issue can be taken, and not mere inferences or

argument. *Clark* v. *Lineberger*, 44 Ind. 223 ; *Jackson School Tp.* v. *Farlow*, 75 Ind. 118. Even if we were authorized to indulge the inference in aid of the pleading that the balance of the train had its momentum checked by the reversal of its engine and the breaking loose of the seven cars, yet there is nothing upon which we can even base an inference, much less is there a direct averment that its velocity was sufficiently checked to prevent it from colliding with decedent's engine, with all the disastrous results alleged, without the breaking of the draw-bar and coupling appliances.

It is said in 1 Shear and Red. on Neg., section 26, that "The breach of duty, upon which an action is brought, must be not only the cause, but the *proximate cause*, of the damage to the plaintiff.    *    *    *    *
The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces the event, and without which that event would not have occurred."

To the same effect are 16 Am. and Eng. Ency. of Law, and cases there cited.

It is not shown by any facts stated in the first paragraph, that the injury complained of would not have occurred just as it did without the defective draw-bar and coupling appliances, and without the seven cars breaking loose from the balance of the train of appellant. For these reasons we are of opinion that the trial court erred in overruling the demurrer to the first paragraph of the complaint.

The second and third paragraphs are the same in all respects as the first, except that they add an element of negligence not contained in the first, namely, in the second: "That the appellant was carelessly and negligently backing a train of twenty-four cars, having carelessly and negligently failed and omitted to provide

a clear track for decedent's train, or take any precautions against injury to decedent by other trains in said yard at the time; that appellant had carelessly omitted to provide a flagman, or other usual or ordinary means of warning decedent of the presence and approach of appellant's said train upon said track; that appellant was carelessly and negligently backing its said train along said track at a high and unlawful rate of speed, to-wit: at the rate of eight miles per hour, and without a brakeman or switchman or other employe upon the rear car thereof, or flagman preceding the same to warn decedent of the approach of said train."

The third is the same as the second, with the additional averments that: "The consideration for the agreement was the delivery by the I. & St. L. R. W. Co. of said cars as aforesaid, and the permission by said I. & St. L. R. W. Co. to the appellant to the use and run of the tracks and switches of the I. & St. L. R. W. Co. for the purpose of delivering cars of the I. & St. L. R. W. Co., found in the yards of appellant in a similar manner as aforesaid, which was on that day, and for a long time prior thereto had been, the custom to do."

It will be observed that the several acts, breaches and omissions of alleged duty charged against appellant in the second and third paragraphs, not contained in the first, are alleged to have been negligently done and omitted by the appellant and without the fault of the decedent. It is not necessary in such a complaint to recite all the facts and circumstances that may tend to show that the act complained of was negligent. It is settled by the decisions of this court that a complaint charging the defendant with an act injurious to plaintiff, with a general allegation of negligence in the performance of the act, is sufficient to withstand a demurrer to the complaint for want of sufficient facts; and that

under such allegation any evidence tending to show that the act was negligently done may be admitted; otherwise the evidence would have to be pleaded instead of the facts. *Cleveland, etc., R. W. Co.* v. *Wynant,* 100 Ind. 160; *Louisville, etc., R. W. Co.* v. *Jones,* 108 Ind. 551; *Anderson* v. *Scholey,* 114 Ind. 553; *Duffy* v. *Howard,* 77 Ind. 182; *Kessler* v. *Leeds,* 51 Ind. 212; *Ohio, etc., R. W. Co.* v. *Selby,* 47 Ind. 471; *City of Fort Wayne* v. *DeWitt, supra; Indianapolis, etc., R. R. Co.* v. *Keely's Admr.,* 23 Ind. 133; *Deller* v. *Hofferberth,* 127 Ind. 414.

We are, therefore, of opinion that the second and third paragraphs of the complaint each states facts sufficient to constitute a cause of action, and that the trial court did not err in overruling the demurrer to each of them.

The principal question discussed by appellant's counsel relates to the sufficiency of the evidence to support the verdict.

It is contended that it is insufficient, and that, therefore, the court erred in overruling the motion for a new trial. The undisputed evidence shows that by mutual consent, practice, and custom, the two railroad companies had for a great many years been in the habit of daily returning cars found in the switchyards of each belonging to the other, and for such purpose each company had and enjoyed the same privilege of running the engines of each into the switchyards of the other to take cars home as if each company owned both switchyards. The switchyards had many tracks in them. The time to take cars home was about 9 or 10 o'clock A. M., and often in the afternoon of each day when there was any cars in either yard belonging in the other. At the usual hour, on the 29th day of July, 1890, the decedent, who was the switch engineer of the I. & St. L. R. W. Co., and had been for thirty-seven years,

started to take home about ten cars found in the yard of his company belong to the appellant, and just as he was entering the yard of the appellant with his switch engine drawing said cars, the appellant's servants were in the act of moving out of said yard a train of twenty-four cars to take them home to the switchyard of another company—the Vandalia—whose yards were between those of the appellant and the I. & St. L. R. W. Co., in the city of Terre Haute.

The main track of appellant's switchyard was the one generally used for going into and coming out of said yard with cars. It ran in a southerly direction, the I. & St. L. R. W. Co.'s yards being in a northerly direction from appellant's yards. There were tracks parallel with the main track of the switchyard of appellant, and it curved in such a manner as that when box cars stood on the parallel track next to it, which was the case at the time the injury occurred, those in charge of each train could not see the approach of the other until they came within seven car lengths of each other; and there was evidence from which the jury might have found that appellant's train was backing at the rate of seven or eight miles an hour and the decedent's train was being drawn forward at the rate of seven or eight miles an hour when they came in sight of each other; and, on the other hand, there was evidence from which the jury might have found that appellant's train was backing at the rate of only four miles an hour, and that the decedent's train was being drawn forward by his engine at the rate of eight miles an hour when they came in sight of those in charge of each. Both trains were equipped with air and other brakes. The appellant's train had three brakemen stationed on top of the cars at proper places along the train so as to give effec-

tive aid in stopping the train when necessary; one of such brakemen was on the rear end of said train and nearest decedent's engine, the better to look out for obstructions on the track. Decedent's train was also equipped with the necessary number of brakemen.

On the discovery of each other by those in charge of each train, which took place as soon as they came in sight, some seven or eight car lengths apart, the signal for brakes and to stop was given by each when they were about that distance apart, both engines were reversed, the air and other brakes applied on each, the decedent's train running forward thereafter three or four car lengths, when seven cars that broke loose from appellant's train collided with decedent's engine, thereby causing his death. A car length, including the coupling space, is about thirty-three feet. On the reversal of appellant's engine the draw-bar pin in the front end of the seventh car from the rear end of appellant's train broke, which caused the draw-bar to pull out of that car and let the seven cars from the rear end of appellant's train loose therefrom; and their momentum derived from the velocity of appellant's train carried them on until they came in contact with decedent's engine, causing the collision and death as above stated. The persons in charge of each train, including decedent, used all reasonable diligence and efforts to stop their respective trains after the discovery of the approach of each and before the collision. The balance of appellant's train, after the seven cars broke loose therefrom, was stopped still six or seven car lengths from the portion that collided with decedent's engine; and the undisputed evidence shows that if the draw-bar pin had not broken the whole train could and would have been stopped in time to avoid the collision. The decedent's

train was running three or three and a half miles an hour when the collision occurred.

The undisputed evidence shows that the draw-bar and pin were in good condition and such as are in daily use by well regulated railroads, and that the whole coupling appliances were sound and in good condition, including the timbers of the car to which they were attached.

Therefore, the charge of negligence in the use of the draw-bar and pin and coupling appliances is not established by the evidence. The evidence does establish, however, that the proximate cause of the injury complained of was the breaking of the draw-bar pin, without which the injury would not have occurred. The breaking of the pin, therefore, was an inevitable accident. A party is not liable for the consequences of such an accident unless his want of due care and his negligence concur with such accident in producing the injurious consequences, and unless without his negligence the injury would not have been caused by the accident alone. In other words, if the accident and want of ordinary care concur in producing an injury, or if the negligence induces the accident by which the injury is produced, the negligent person is liable for the consequences, if without his negligence the injury would not have been caused. 16 Am. and Eng. Ency. of Law, 396, and cases there cited; 1 Shear. and Redf. Neg., sections 33–16; Whart. Neg., sections 123, 559, 116; 2 2 Thomp. Neg., page 1085, section 3; *Wabash, etc., R. W. Co.* v. *Locke*, 112 Ind. 404.

The question therefore arises whether the appellant's servants were guilty of negligence in running appellant's train in the manner and under the circumstances they did at the time of the injury ; and, if it was negligence, whether that negligence concurred with and induced the accident of the breaking of the draw-bar

pin?. The only regulations proven for the use of the switchyards of each company by the other, and especially for the use of appellant's yards by the I. & St. L. R. W. Co., were to the effect that when the latter took cars home to appellant's yards, if the latter's servants saw the appellant's yardmaster about, it was the custom to ask him if there was anything in the way of their going in with the cars and to place them where he directed. And if there was any train or cars to obstruct their way into appellant's yards the yardmaster would so inform them and require them to wait until such train or obstructions were out of their way, and then he would notify them to pull in. But the custom was, if they did not see the yardmaster or any of appellant's servants around, to pull in anyway, keeping a sharp lookout for obstructions and moving trains in the appellant's yard, and appellant's servants were also accustomed to look out for incoming trains. In short, it was the custom of the servants of each company to proceed with their trains in and out of appellant's yard and protect themselves from danger of obstructions and moving trains therein by keeping a sharp lookout therefor. On this occasion the decedent, not seeing appellant's yardmaster or other servant of appellant, went in without inquiry. On the occasion mentioned, those in charge of each train, including decedent, were careful in keeping a sharp lookout for moving trains and obstructions in the yard of appellant.

It is earnestly insisted by the appellee's learned counsel, that under the circumstances of the obstruction of the view of the main track of appellant's switchyard by the sharp curve therein and the box cars standing on the track parallel therewith so that those in charge of either train could not see the approach of the other until within seven car lengths of each other, due

care required appellant to send forward a flagman or other employe to notify decedent of the approach of appellant's train especially as appellant's servants knew that decedent's train was liable to be coming into the appellant's yard about that time of the day; and that the failure to exercise such precaution under the circumstances was negligence.

We are of opinion that this contention is fully justified by the law. It follows that appellant's servants were negligent in not taking such precautions as were reasonable and necessary to avoid injury to themselves and those they were liable to encounter in going around the curve, and that negligence was concurrent with, and induced the accident of, the breaking of the draw-bar pin and coupling appliances, which separated the seven cars from the balance of the train, thereby producing the collision and death of appellee's decedent. That makes out the case of negligence charged in the complaint against the appellant. But that is not all, or the complete cause of action charged in the complaint. It is also charged in the several paragraphs thereof, and without which neither paragraph would have been good, that the decedent was without fault or negligence. The same principles of law apply to his conduct in running his train on that occasion that apply to the conduct of appellant's servants in running theirs. The evidence clearly shows that he had the same reason to apprehend and expect that he might or would encounter moving trains around that curve, that appellant's servants had, and knew as well as they did, all about the danger, and that those in charge of such trains could not see each other until within seven or eight car lengths of a collision. And yet he moved his engine and train on at the rate of seven or eight miles an hour, just as if no possible danger confronted him,

taking no other precaution to avoid it than to keep a close lookout from his cab for the same. So that with the efforts of himself and crew in reversing his engine and the application of the air and other brakes, on sighting appellant's train, he was only able to reduce the speed of his own train to three or three and a half miles an hour when the collision occurred that produced his death. He was equally guilty with the appellant's servants of negligent conduct.

He had no greater rights in that yard than the servants of its owner had. Concede that he had equal rights with them in the use of the yard in bringing home cars, and yet he was under the same obligation resting upon them to exercise due care and precaution for his own safety and that of others in charge of trains he might encounter.

*The Union R. W. and Transit Co.* v. *Shacklet, Admx.,* 119 Ill. 232, in many respects is very much like this case, and it is decisive of the question of contributory negligence on the part of decedent in this case. Elijah E. Shacklet and his brother, in September, 1879, were shippers and dealers in live stock and shipped four car loads of cattle from Missouri to the National Stock Yards in East St. Louis. The Shacklets rode in a caboose attached to the train until they reached the union depot in St. Louis where they were told to change cars. The cars containing their cattle were then detached from the Missouri Pacific train and turned over to the Union R. W. & Transit Co. to be taken by it to the National Stock Yards in East St. Louis. The train of the Transit Company, in which the detached cars were placed for this purpose, had on this occasion no caboose attached to it for the accommodation of the shippers, though the evidence showed a caboose was sometimes provided for this purpose. They were

ordered by the engineer to take a position in front on the engine. That being the only place provided for them, they accordingly did so. While rounding a sharp curve in the track and almost at their destination, the train carrying them collided with another belonging to the Wabash, St. Louis and Pacific R. W. Co., which at the time was being rapidly backed out from the stockyards. The front end of the tender upon which the shippers were riding being sloped and wedge-shaped, the rear car of the Wabash train was forced, in the collision, up the tender, catching the plaintiff's intestate between it and the car, inflicting upon him serious injuries, from which he died in a few minutes thereafter. The trial resulted in a judgment against the Transit Company for $5,000.00. The accident occurred on a short line of railway belonging to the National Stock Yards, and connecting the various roads passing through and terminating at East St. Louis, with the stockyards, and was used exclusively for transferring and carrying stock to and from the stockyards. It was open alike to all the owners and operators of railways having occasion to use it for such purpose. The substance of the charge of negligence, in the declaration, shortly stated, is, that at the time of the collision the defendant was operating its train without having first ascertained whether or not the track was obstructed by other trains. The court on page 235, said: "Notwithstanding the very sweeping assertion of counsel for plaintiff in error, that the collision in question was produced by the Wabash without the slightest fault on the part of the Union Transit Company, we feel constrained to say, that after a very careful examination of the record we fail to find the statement verified by the evidence. For instance, Mr. Dasey, the very first witness examined * * says: * * * there was a very short curve at the stock

yards, and going around the curve there was a Wabash train in there, backing out, and in making this curve the trains collided. * * * Both trains were moving when they collided. * * * There were no particular rules as to the use of those tracks. The Transit Company generally had the best show there. The tracks all belonged to the National Stock Yards. The engines of the different roads went in and out any way they could * * * * ." Another witness said: "They [the defendants] were perfectly familiar with the manner these tracks were used by other companies. They generally whistled going around the curve. Simply looking out for each other, was the way they avoided accidents * * . It is shown by other testimony, that on the curve where the collision occurred one could see but a very short distance—not to exceed, perhaps, seventy-five yards and one of the witnesses puts it much below that. There is no attempt on the part of the company to show, nor does it otherwise appear, that the defendant [the Transit R. W. Co.] had taken any means whatever to ascertain whether the track was clear or not, or to prove that the defendant's train had the right of way. In fact, the very contrary is shown. Nor does it appear that the company, although daily running its trains to and from the stockyards, had any system of telegraphing, telephoning, or of flagging, to either give or receive notice of the approach of its own trains, or of those belonging to other companies. The only thing done to avoid danger was the ringing of the bell or sounding the whistle while rounding the curve. But that clearly could be of no avail where a long train like that of the Wabash had commenced already to back out, as is abundantly proved by the accident in question. The protection afforded by the ringing of the bell and the sounding of the whistle, under the circum-

stances shown, is hardly so good as that which the crew of a vessel at sea, enveloped in an impenetrable fog, derives from the monotonous notes of the fog horn. While the expedient of the fog horn, in the case of a vessel, is by no means absolute security against collisions, yet it is, under the circumstances, about all that can be done.   Not so with the plaintiff in error.   By a proper system of flagging, or other like precautions, the company might doubtless have attained absolute security against collisions with other trains.   But nothing of this kind was done, or attempted to be done.   On the occasion in question, as usual, the train was blindly forced around the curve, at a speed, .as one of the witnesses swears, of six miles an hour in expectation, as defendant's own witness swears, of encountering other trains!   From the evidence before us, it is clear that the companies doing business over the stockyards' tracks, as a general rule, operated their trains in a grossly negligent manner, and the Transit Company was equally guilty with the others.   It is true, the Wabash Company, on the occasion in question, was, perhaps, more culpable than the defendant, but that cannot avail the latter.".

In the case at bar, the decedent occupies the exact situation that the Transit Company did in the case from which we have just quoted, and the appellant occupies very much the same position occupied by the Wabash Company.

It may be that appellant was more culpable than the decedent, but the case referred to establishes that decedent was also guilty of negligence in failing to take such precautions as were easily within his power to secure his own safety and avoid injury to others.   In this case as in the Illinois case, those in charge of both trains were guilty of negligence.   And the negligence

of the decedent proximately contributed to the production of his own injury, and therefore the evidence is not sufficient to support the verdict unless appellant's negligence was so gross as to imply a wilful intention to inflict the injury. *Korrady, Admx.*, v. *Lake Shore, etc., R. W. Co.*, 131 Ind. 261 ; *Pennsylvania Co.* v. *Meyers, Admx.*, at this term, and cases there cited. There is no evidence tending to show that the injury was intentionally inflicted. This is not a case of conflict, but a lack of sufficient evidence. We are therefore of the opinion that the evidence is not sufficient to support the verdict ; and for that reason the trial court erred in overruling the motion for a new trial. It is also contended that the trial court erred in giving and refusing instructions. But the conclusion we have reached renders it unnecessary to determine any of the questions arising on such instructions, as the law laid down in this opinion will be a sufficient guide in formulating instructions on another trial, in case it should be had. The judgment is reversed, the cause remanded, with instructions to sustain the demurrer to the first paragraph of the complaint, and to sustain the motion for a new trial.

Filed March 27, 1894 ; petition for rehearing overruled January 31, 1896.