Pennsylvania Co. *v.* Fertig.

## Pennsylvania Company *v.* Fertig.

[No. 4,412. Filed April 19, 1904.  Rehearing denied June 24, 1904. Transfer denied January 12, 1905.]

1. Negligence.—*Contributory.*—*Burden of Proof.*—*Allegation of Want of in Complaint.*—*Effect of.*—Since the enactment of the statute of 1899 (Acts 1899, p. 58, §1) the burden of proof to show contributory negligence is upon the defendant, and the fact that plaintiff has alleged the want of same in his complaint does not change the case, the allegation being surplusage.  p. 462.

2. Pleading.—*Complaint.*—*Injuries.*—*Negligence.*—*Causal Connection.*—Where a complaint sets out the facts constituting the breach of legal duty, and then sets out the injuries and avers that they were received through and by the negligence of the defendant, without applying the averment to any breach of duty, such averment adds nothing to the complaint and will not be considered.  p. 462.

3. Railroads.—*Statutory Signals.*—*City Ordinances.*—*Flagmen.*—The law requiring a railroad company to give signals at a crossing, and a city ordinance requiring a railroad company to station flagmen at street crossings, are designed not only for the protection of travelers from collision with passing trains, but to give drivers approaching the crossing an opportunity to secure themselves against the fright of their teams.  p. 463.

4. Pleading.—*Complaint.*—*Failure of Railroad Company to Give Statutory Signals.*—*How Alleged.*—It is not necessary, in a complaint for damages for personal injuries on account of negligence in the failure of a railroad company to give the statutory signals, to allege that such company negligently failed to give such signals, since such failure is negligence *per se.*  p. 463.

5. PLEADING.—*Complaint.—Injuries.—Breach of Duty.—Proximate Cause.*—Where the complaint shows that the injuries complained of would not have been received but for the acts of negligence charged, and the injuries were such as would naturally be anticipated from the breaches of duty charged against defendant, such complaint sufficiently shows that the breaches of duty charged were the proximate cause of the injuries. p. 463.

6. NEW TRIAL.—*Contributory Negligence.—Question for Jury.*—Where the evidence shows that plaintiff was driving up the street, and, when within about 100 feet of a railroad crossing, stopped his horse and looked and listened, but could neither see nor hear any train; that he drove on in a trot, his vision of the track being to some extent obstructed; that when he reached the track a passenger-train was closely approaching at the rate of 30 miles an hour; that it gave no signals; and that his horse took fright and threw him out and inflicted serious injuries, such evidence presents a question for the jury. p. 465.

From Marshall Circuit Court; *Joseph W. Adair,* Special Judge.

Action by David Fertig against the Pennsylvania Company. From a judgment on a verdict for $1,200, defendant appeals. *Affirmed.*

*Zollars & Zollars* and *Samuel Parker,* for appellant.
*Martindale & Stevens,* for appellee.

BLACK, J.—In the amended complaint of the appellee, a demurrer to which, for want of sufficient facts, was overruled, after preliminary averments, it was stated, in substance, that the appellee and his wife were lawfully traveling in a buggy, drawn by a gentle horse, from their home in Marshall county to Plymouth, Indiana, and went north on Fifth street, which crossed, within the city limits, the track of a railroad operated by the appellant; that the street extended north and south, and the railroad ran through the city northwesterly and southeasterly; that on the west side of the street, and the south side of the railway and near thereto, there were a number of dwelling-houses, a grape arbor, trees, vines, outhouses and other buildings, which obstructed the view to the west, so that a person going north on the street south of the crossing could not see a train

approaching from the west until it approached within one hundred feet of the crossing; that at the crossing the railroad was built upon a high grade, and on the north side thereof, in the street, there was a steep and abrupt ascent, so that a vehicle drawn rapidly north, off the crossing, would leave the ground for some distance, and strike the earth with great force; that the appellee, on entering Fifth street, and when within one hundred feet of the crossing, stopped his horse and looked and listened for an approaching train, and also requested his wife to look and listen for an approaching train, and after they had stopped and listened and looked for some moments, hearing and seeing no train or locomotive, he started and drove on to the crossing, and on reaching the crossing he, for the first time, discovered an east-bound passenger train coming at a high rate of speed, and almost upon him, at which time his horse became frightened at the approach of the train, lunged forward rapidly and viciously, became unmanageable, upset his buggy, and appellee was violently thrown upon the ground, and as a result thereof his left leg was broken just below the hip-joint, and he was otherwise bruised and injured, all of which occurred within 150 feet of the track at the crossing; that when appellee discovered the train approaching he was upon the track, and it was too late for him to turn back, and the only way possible for him to avoid being struck by the locomotive was to go forward as quickly as possible, which he did, and when his buggy left the railroad track the locomotive was so close that in passing it barely missed the hind wheels of his buggy.

It was then alleged that appellant gave no warning or signal whatever on approaching the crossing, as is required by law, and there was no watchman or flagman stationed at the crossing, as, by ordinance of the city of Plymouth, the appellant was then and there required to have; that the appellant, the railroad company, then and there carelessly and

negligently approached the crossing with the passenger-train, without sounding the whistle or ringing the bell when within one hundred rods of the crossing, while approaching thereto, and without giving any warning of the approach thereto, as the law requires, and without having a flagman stationed at the crossing, as was then and there required by the ordinance of the city; that if appellant had not been negligent and careless in failing to sound the whistle and ring the bell as aforesaid, and in failing to have a flagman stationed at the crossing, as required by said ordinance, in full force and effect at the time of the injury herein complained of, the appellee would have had warning of the approach of the train, and would not have driven on the crossing until after the train had passed, and would have avoided the injury complained of herein, which was received between the hours of 10 and 11 o'clock a. m., on the day before mentioned, through and by the negligence of the appellant, and without any fault or negligence on the part of the appellee. There were also allegations concerning the character and extent of the injury, and relating to the amount of the damages, for which judgment was demanded.

1. The pleader seems to have sought to follow precedents in vogue before the enactment of the statute of 1899, making it unnecessary for the plaintiff to plead or prove the want of contributory negligence on his part in such a case (§359a Burns 1901, Acts 1899, p. 58), and the portions of the complaint introduced solely for such purpose are of no importance; notwithstanding such averments, the burden of proving contributory negligence of the plaintiff would rest upon the defendant.

2. The averment, in the concluding portion of the complaint, that the injury complained of herein was received through and by the negligence of the defendant, without applying the averment to any act or omission of the appellant stated in the same connection or in the preceding averments, likewise did not add any material fact to those al-

ready stated, nor impart any additional force to the preceding allegations. *Ohio, etc., R. Co.* v. *Engrer* (1892), 4 Ind. App. 261; *Cincinnati, etc., R. Co.* v. *Voght* (1901), 26 Ind. App. 665.

3. It must be considered that the statutory duty of giving signals of the approach to a crossing, and the duty prescribed by an ordinance of keeping a flagman at a crossing, are duties imposed not merely for the protection of travelers from actual collision with passing trains, but also to afford opportunity to travelers in vehicles drawn by animals to secure them against taking fright at passing trains.

4. The complaint shows failure on the part of the appellant to cause the giving of required signals and warnings of the approach of the train, and thereby shows omissions constituting negligence *per se,* it not being necessary expressly to designate or describe such failures as having been negligent. It is alleged that if the appellant had not been negligent and careless in failing to sound the whistle and to ring the bell, and in failing to have a flagman stationed at the crossing—the negligent omissions charged in the complaint—he would have had warning of the approach of the train, and would not have driven on the crossing—where he first discovered the train, and where the horse was frightened by the approach of the train—until after the train had passed, and would have avoided the injury complained of.

5. We think the complaint must be regarded as showing that an injury was suffered which would not have occurred without the negligence charged, and that the negligent omissions alleged constituted the cause of the injury. It is true that a person is not responsible for every injury which would not have occurred without some act or omission on his part; but if an act or omission constituted negligence, and an injury to one not chargeable with fault follows, of such a character that it might have been anticipated as a natural result of such negligence, and the par-

ticular injury would not have occurred without such negligence, then, though other causes, whether wrongful or otherwise, contributed to the injury, the negligence without which the injury would not have occurred must be considered as contributing proximately thereto. Here the appellee alleged that if the appellant had not been negligent, as charged, he would have had warning, and would not have gone to the place of danger, and would have avoided the injury; and the negligence was such that it might have been anticipated, as a natural result thereof, that a person in the situation and condition of the appellee would have been induced thereby to go to such place, and would have been so injured.

In *Terre Haute, etc., R. Co.* v. *Brunker* (1891), 128 Ind. 542, 550, it was said: "As between said railroad company and the approaching traveler, it induced him to approach to within an unsafe proximity of the crossing by the failure to give the lawful signals, and the train is not lawfully there as against the traveler without having first given the signal required by law before coming on the crossing."

In *Evansville, etc., R. Co.* v. *Krapf* (1896), 143 Ind. 647, 652, it was said: "There is nothing in the first paragraph of the complaint showing that the alleged resultant injury was produced by the use of the alleged defective draw-bar and coupling appliances; that is, nothing to show that without such use the injury would not have occurred."

In *Ohio, etc., R. Co.* v. *Trowbridge* (1890), 126 Ind. 391, 395, we find this language: "The principle underlying this doctrine is that there must be some connection between the effect and the cause—between the injury and the wrong. It is not necessary, however, that there should be a direct connection between the wrong and the injury; it is enough if it appears that but for the wrong no injury would have occurred, and that the injury was one which might have been anticipated." See, also, *Chicago, etc., R.*

*Co.* v. *Fenn* (1892), 3 Ind. App. 250; *Louisville, etc., R. Co.* v. *Ousler* (1896), 15 Ind. App. 232; *Baltimore, etc., R. Co.* v. *Musgrave* (1900), 24 Ind. App. 295; *Palmer* v. *Inhabitants of Andover* (1849), 2 Cush. 600; *Toms* v. *Corporation of Whitby* (1874), 35 U. C. Q. B. 195. While the complaint is not in very good form, we hold it sufficient.

6. With the general verdict in favor of the appellee, the jury returned answers to a large number of interrogatories submitted by the parties, and the court overruled the appellant's motion for judgment in its favor upon these answers. In the numerous answers the jury specially found many facts in entire agreement with the general verdict, substantially in the language of the complaint, and we can not regard it as worth the required space to set out all the special findings. It was found that there was no ordinance of the city requiring the keeping of a flagman at the crossing, and there was no flagman there, and the appellee knew before the accident that the appellant had no watchman or guard at the crossing. Therefore the negligence of the appellant, on which the general verdict was based, consisted in its failure to sound the whistle and to ring the bell, as required by law. Many of the interrogatories relate to the physical surroundings and to the facilities for discovering the approach of the train. There were a number of contradictory findings. It was found that the appellee, when at a point within one hundred feet from the place where the railroad crossed the street, stopped his horse, and looked and listened for approaching trains on the railroad; also that he stopped and listened at a point about 125 feet south of the main track; that it was about 150 feet to the main track from a corner of the street on which he approached the railroad, and that over about 140 feet of this distance the horse moved at a trot. There were obstructions to the view on the west side of the street, south of the right of way of the appellant, consisting of buildings, grape

arbor, apple tree and shrubbery, which prevented a person driving north on the street from seeing a train approaching from the west. In looking to the west up the tracks, there was nothing to obstruct the view after reaching the south line of the appellant's right of way, except an apple tree with grape vines thereon. This tree was about sixty-six feet west of the center of the street. A part of the top of the tree projected over the right of way; its limbs extended over the right of way, so as to obstruct the view, eight or nine feet. The railroad ran seventy-seven degrees north of west. The appellee knew that a passenger-train coming from the west was due about the time he reached the crossing. There was a sounding of the whistle about three-fourths of a mile west, for another crossing, and some persons in the vicinity of the street on which he was traveling heard it.

There were a number of interrogatories and answers relating to the distances at which a train might be seen. Thus it was found that at a point forty-three feet south of the main track (which would be within the right of way), the appellee could have seen an approaching train at the distance of about fifteen hundred feet, and that a person at intermediate points between such place and the main track could have seen the train about as far west as his sight could carry; and to questions asking if the appellee, when at a point forty-three feet south of the center of the main track, also at a point thirty-five feet south thereof, could have seen the train approaching from the west, at a distance of at least 2,760 feet, if he had looked, and had ordinarily good eyesight, the jury answered that they thought he could. The train, consisting of a locomotive and tender and a number of cars, passed over a frog and switch about 350 feet west of the center of the crossing. The jury answered that when at a point forty-three feet south of the main track the appellee might have heard the noise of the coming train, if he had listened and had been of ordinarily good hearing.

Also, to the question, "How far west of the street could he have heard the noise of the train, if he had listened at a point forty-three feet south of the main track, if he' had been of ordinarily good hearing?" the jury answered: "About four hundred feet." To the question, "Did the train, as it approached the crossing, make a natural rumbling noise, loud enough to be heard by persons of ordinary hearing, diligently listening, when on the street one hundred or more feet from the railroad tracks?" the jury answered: "Not real sure they could." Also, to the question, "Could the appellee have heard the natural rumbling noise of the train before he reached the south line of the appellant's right of way, had he stopped and listened diligently?" the jury answered: "Not real sure he could." The speed of the train as it passed was about thirty miles an hour.

We have sought to state the principal facts which seem to have been supposed important as furnishing a basis for the motion for judgment. A train running at the rate of thirty miles an hour runs 2,640 feet in one minute, or forty-four feet in one second. It would run 1,500 feet in a little less than thirty-five seconds, and 2,760 feet in one minute and a little less than three seconds. The statute provides for warning by whistling, at a distance not more than one hundred rods nor less than eighty rods—that is, not more than 1,650 feet and not less than 1,320 feet—and by the continuous ringing of the bell from the time of sounding the whistle until the crossing is passed. There is no question, under the motion for judgment as to the negligence of the appellant, but the supposed ability of the appellee to protect himself against the consequences of the appellant's failure is urged against the general verdict. We are not informed by the special findings as to the speed at which the appellee advanced, except that his horse, twelve years old, proceeded at a trot. It is impossible to determine with accuracy, from the special findings, that when he was at any certain point, after he stopped, looked and listened, he

could have seen or heard the train before he did become aware of its approach, when he was already on the crossing. It seems to us to be beyond our province to decide, against the jury and the trial court, that the appellee did not exercise reasonable care under the circumstances, the burden of which question was upon the appellant.

The overruling of the appellant's motion for a new trial is assigned as error. The evidence was such as to make the case one peculiarly·for the jury, both upon the question as to the appellant's negligence and upon the question as to whether the appellee was at fault; and we can not disturb the conclusion reached in the court below thereon. Some objections raised in the examination of witnesses and the refusal of some instructions asked by the appellant are presented here, but, upon examination and consideration of these matters, we find nothing of sufficient importance for discussion.

We do not find any available error in the record. Judgment affirmed.