# THE WABASH RAILROAD COMPANY *v.* McNOWN, ADMINISTRATOR.

[No. 7,638. Filed June 27, 1912. Rehearing denied January 10, 1913. Transfer denied March 25, 1913.]

1. RAILROADS. — *Operation.* — *Speed.* — *Negligence.*—Although the running of a train at thirty-five or forty miles an hour through a town or city in violation of an ordinance is negligence *per se*, in the absence of a statute or ordinance the question of whether the operation of a train at such speed is negligence depends upon the conditions, situation and circumstances in each particular case. p. 123.

2. RAILROADS. — *Crossing Accidents.* — *Speed.—Negligence.—Complaint.*—In an action to recover for the death of plaintiff's decedent in a crossing accident, where the complaint showed that the crossing was on the main street of a town, that the view of an approaching train was obstructed and that the company had for some time permitted an electric gong at the crossing to remain out of repair so that it constantly sounded without regard to whether a train was in fact approaching, and thus obstructed the sound of approaching trains, that the defendant railroad company knew the conditions and that the colliding train approached the crossing at a speed of thirty-five or forty miles per hour, the negligence of defendant in the operation of its train at such speed, was sufficiently shown, even in the absence of an ordinance of the town regulating the speed of trains. p. 124.

3. RAILROADS.—*Operation.—Gongs at Crossings.—Negligence.*—In the absence of a law imposing the duty on railroads to maintain electric gongs at crossings to sound the approach of trains, the failure of a railroad company so to do is not actionable negligence; but, if such gong is installed, the company's act in permitting it to become defective so as to sound continually without regard to the approach of a train; and thus destroy or partially

destroy the efficacy of other signals which the law makes necessary, is such negligence as will render the company liable for damages proximately caused thereby.   p. 124.

4.   RAILROADS.—*Crossing   Accidents.—Proximate   Cause.—Failure to Signal Approach of Train.—Knowledge That Train is Approaching.*—Where a traveler approaching a railroad crossing knows that a train is approaching and knows such fact in time to stop and avoid injury, the failure of those in charge of the train to signal its approach to the crossing cannot be treated as the proximate cause of the injury.   p. 125.

5.   RAILROADS.—*Crossing Accidents.—Failure to Signal Approach of Train.—Proximate Cause.—Complaint.*—Where the complaint for death of a person in a railroad crossing accident alleged negligence in defendant's failure to signal the approach of the train to the crossing, other allegations showing that the driver of the vehicle, in which decedent was a passenger, knew that an electric gong maintained by defendant to sound the approach of trains to the crossing was out of repair so that it constantly sounded regardless of the approach of trains, and that the driver was told by the occupants of the vehicle and others that a train was approaching, will not justify the assumption that the driver knew that a train was approaching, where a view of the approaching train was obstructed and the sounding of the gong prevented such driver from hearing its approach, so as to preclude the holding that the alleged negligence of defendant was the proximate cause of the injury.   p. 125.

6.   RAILROADS.—*Failure to Signal Approach of Train to Crossing.—Negligence Per Se.—Complaint.*—The failure to give the signals required by statute of a train's approach to a crossing is negligence *per se*, and the averment of such failure in a complaint is a sufficient charge of negligence, unless its effect is lost by other controlling averments.   p. 126.

7.   APPEAL.—*Review.—Verdict.—Answers to Interrogatories.*—On appeal every presumption will be indulged in favor of the general verdict as against the jury's answers to interrogatories, and such verdict will not be overcome by such answers unless a conflict exists between them and the verdict that is irreconcilable on any theory, or on any supposable state of facts provable under the issues.   p. 126.

8.   RAILROADS.—*Crossing Accidents.—Verdict.—Answers to Interrogatories.*—In an action to recover for a death in a railroad crossing accident, answers to interrogatories showing that the driver of the hack in which decedent was riding learned of the approach of the train as he approached the crossing, that there was nothing that would have prevented him from stopping his team or turning it away from the track in time to avoid injury, that before driv-

ing on to the track decedent indicated to the driver that the train was approaching and requested him to stop before driving on to the track, that the hack cleared the track in front of the train without being struck, but that decedent was thrown out, or in some other manner escaped from the rear of the hack, etc., and was injured, and that the train gave the statutory signals of its approach to the crossing, are not in irreconcilable conflict with a general verdict for plaintiff as showing contributory negligence on the part of the decedent.   p. 127.

9. RAILROADS.—*Crossing Accidents.—Negligence of Driver of Vehicle.—Contributory Negligence.—Imputation.*—The negligence of the driver of a vehicle in crossing a track in front of an approaching train cannot be imputed to a passenger in such vehicle who was killed by a collision with the train.   p. 129.

10. NEGLIGENCE.—*Contributory Negligence.—Answers to Interrogatories.*—It is only where the facts found by the jury lead to but one inference, that the court will say as a matter of law that the injured party was guilty of contributory negligence.   p. 129.

11. RAILROADS.—*Crossing Accidents.—Answers to Interrogatories. —Conflict With Complaint.*—In an action against a railroad company for the death of an occupant of a hack by collision with defendant's train at a crossing, answers by the jury to interrogatories showing that the train did not collide with the horses or the vehicle, that neither the driver, horses, nor vehicle were injured, and that after the hack had cleared the track the decedent was thrown or in some other way escaped, from the hack and fell so as to come in contact with the train whereby she received injuries causing her death, were not at variance with the allegations of the complaint that as the wheels of the hack struck the rails of the railroad the decedent was thrown or caused to fall from said hack upon the railroad, and that the approaching train ran against or over her body and inflicted injuries from which she immediately died.   p. 129.

12. RAILROADS.—*Crossing Accident.—Proximate Cause.—Concurrent Negligence of Driver of Carriage.*—Where a train approaching at an excessive speed was invisible because of obstructions to the view, and the giving of the usual crossing signals could not be heard because of the constant sound of a defective electric gong which defendant maintained at the crossing, the act of a hack driver, who knew of the defective gong and that it constantly sounded regardless of the approach of trains, in crossing the track in front of the train in the face of warnings from persons near by, which he supposed were based on the sounding of the gong, cannot be held the sole proximate cause of a collision in which his passenger was killed, so as to relieve the railroad

company from liability for its negligence in the manner of operating the train and in maintaining the defective gong.   p. 130.

13.   NEGLIGENCE.—*Intervening Negligence.*—The concurring negligence of a third person is not sufficient, alone, to relieve from liability one whose negligence was the proximate cause of the injury.   p. 132.

14.   APPEAL.—*Review.—Verdict.—Answers to Interrogatories.*—For the purpose of determining the question raised on a motion for judgment on the jury's answers to interrogatories, the averments of the complaint will be assumed as proven.   p. 132.

15.   NEGLIGENCE.—*Joint Negligence.*—Where two or more joint tort feasors are guilty of negligence proximately contributing to an injury, either or all of such joint tort feasors may be required to respond in damages therefor, if the other elements of liability are shown.   p. 132.

16.   RAILROADS.—*Crossing Accidents.—Verdict.—Answers to Interrogatories.*—Where the complaint in an action against a railroad company for the death of plaintiff's decedent in a crossing accident alleged negligence in failing to give the statutory signals of the approach of the train to the crossing, a verdict for plaintiff is a finding that such signals were not given, and is not overcome by answers to interrogatories showing that the whistle was sounded and that the bell was rung, but not showing that the same was done as provided by the statute.   p. 133.

17.   RAILROADS.—*Operation.—Crossing Signals.*—Crossing signals given only at a time when the train is so near the crossing as to render such signals unavailable as notice, do not serve the purpose intended by statute and will not relieve the company from liability.   p. 134.

18.   PLEADING.—*Complaint.—Construction.*—The rule requiring the court, in case of doubt upon the pleading, to construe the same most strongly against the pleader and to indulge against its validity all reasonable inferences not excluded by positive and direct averment, when applied to the construction of a complaint, is applicable to only such averments as are necessary to state the cause of action.   p. 134.

19.   PLEADING.—*Complaint.—Sufficiency.—Inferences of Defense.*—Where all the essential averments of a cause of action are directly and positively stated, the mere inference of a defense to the action, suggested by any of the averments contained therein, will not render the complaint subject to demurrer.   p. 135.

20.   NEGLIGENCE.—*Contributory Negligence.—Complaint.*—Contributory negligence, being a defense, need not be negatived in the complaint.   p. 135.

21.   RAILROADS.—*Crossing Accidents.—Liability.—Contributory Negligence of Driver of Vehicle.*—The contributory negligence of a

hack driver in crossing a track in front of an approaching train, will not relieve the railroad company from liability for its negligence resulting in the killing of a passenger in such hack.   p. 135.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by Charles S. McNown, administrator of the estate of Luella B. McNown, deceased, against The Wabash Railroad Company and others.   From a judgment for plaintiff, the defendant railroad company appeals.·  *Affirmed.*

*Stuart, Hammond & Simms, Allison E. Stuart* and *J. Fred France,* for appellant.

*Lesh & Lesh,* for appellee.

HOTTEL, C. J.—Action against appellant, Timothy Mills and Viola Mills to recover damages for the death of appellee's decedent alleged to have resulted from the negligence of appellant and said Mills and Mills.   The injury to decedent from which her death resulted occurred at a street crossing of appellant's railroad at the town of Andrews, Indiana. The issues of fact were tendered by a complaint and a general denial thereto.   There was a trial by jury resulting in a verdict of $1,000 for appellee against appellant and Timothy L. Mills with which were filed answers to interrogatories. From a judgment on the verdict appellant alone prayed and perfected a term-time appeal.   Appellant's demurrer to the complaint was overruled as was also its separate motion for judgment on the answers to interrogatories.   These rulings, exceptions to which were properly saved, present the only errors assigned and relied upon by appellant.

In view of the questions presented, especially by the motion for judgment on the answers to the interrogatories, all of the essential averments of the complaint upon which proof might have been introduced, are important, and we, therefore, set out the averments or the substance of such as are necessary to an understanding of such questions. The complaint alleges in detail the facts with reference to appellant being a corporation and operating its railroad

through said town of Andrews and across the public street thereof at the crossing where appellee's decedent was killed, and also the facts with reference to said Mills and Mills being engaged in the business of a common carrier carrying persons and baggage for hire by hack, drawn by horses over and upon the main street of said town which crossed appellant's said railroad track, and that on the day appellee's decedent, Luella B. McNown, was killed she had taken passage on said hack from her home south of said railroad track to the interurban station north thereof. Said complaint then proceeds in substance as follows (we italicise parts italicised by appellant in its brief): "that said hack was at said time being driven by * * * William Bowls, * * * the agent and employe of the defendants Mills and Mills; that as the hack on which the said Luella was riding was about to cross said railroad in making the trip to said interurban station, *and while she was a passenger thereon as aforesaid, a train approached from the east at a high speed, and the driver of said hack whipped or otherwise caused the horses hitched thereto and which were drawing the same to plunge forward in order to cross said railroad before the arrival of said train, and as the wheels of the carriage struck the rails of said railroad said Luella B. McNown was thereby thrown or caused to fall from said hack upon said railroad and said approaching train thereupon ran on, against and over her body and inflicted injuries from which she immediately died;* * * * *that the injuries and death of said Luella was caused by the gross negligence of the defendants, which negligent conduct and acts were as follows:*" Here follow averments showing that the view of a train approaching from the east was so completely obstructed as to prevent the traveler approaching the crossing from the south from seeing the same until he *"would almost enter upon the right of way of said railroad;"* and *"until a team approaching from the south would get so near the main track of said railroad that it would be difficult and dangerous to undertake*

*to turn the team and vehicle and avoid a collision by waiting until after the passage of the approaching train to make the crossing."*

The use by appellant for some time prior to appellee's death of an electric bell or gong at said crossing to warn travelers of the approach of trains and the manner, character and purpose of such gong is alleged in detail after which it is averred: that for several days prior to said June 27, 1908, and on said day up to and including the time of said accident, said electric gong or bell had been out of order and repair and was suffered to become and remain out of repair to such an extent and in such a manner that said bell or gong sounded continuously without regard to whether there was or was not a train approaching said crossing; that on said day said gong or bell rang continuously; that the hack driver knew of the condition of said electric bell and for this reason was inattentive to its ringing as said hack approached, and the noise of said gong or bell obstructed the sound of the coming train, such as usually attends the operation of trains; that said train consisting of a locomotive and 25 or 30 freight cars was being operated "at a dangerous rate of speed, to wit from 35 to 40 miles per hour." Knowledge by appellant of all the conditions present at said crossing including character and frequency of travel over same, obstructions to view, the defective condition of the electric bell and its interference with hearing an approaching train, is averred with particularity. Then follow averments of negligence on the part of Mills and Mills as follows: *"that their agent and employe as he approached said railroad just prior to said accident heard said gong or bell but paid no heed to it; that passengers in said hack who also heard said gong or bell called to him that a train was approaching, but he paid no heed to such warning, and bystanders by the side of the street called that a train was coming, but on account of the noise of said bell or gong he did not hear or heed such calls until too late;"* that said

approaching train did not as required by law give the usual signal by whistle at a point from 80 to 100 rods eastward of said crossing, and did not continuously cause the bell to ring from said point until after the passing of said highway crossing; that it was operating said train at a rate of speed which was dangerous and negligent and said injuries and death of said decedent were wholly caused by the joint negligence of the several defendants hereto as aforesaid.

In discussing the sufficiency of the complaint appellant insists: (1) That the running of appellant's train at a speed of 35 or 40 miles an hour as alleged, was not, in the absence of an ordinance prohibiting such speed, negligent. (2) That there is no law requiring a railroad company to construct or maintain an electric bell or gong at a railroad crossing and that, therefore, the failure to maintain or keep such bell does not constitute negligence. (3) That the failure to give the statutory signals could not be the proximate cause of the death of appellee's decedent because the driver of the hack had notice of the approach of said train before attempting to cross the track. (4) That for said reasons no actionable negligence is charged against appellant.

It is true as appellant contends that the running 1. of a train at thirty-five or forty miles an hour in the absence of an ordinance or statute prohibiting such speed, does not *necessarily* constitute negligence. The running of a train at such speed through a town or city in violation of an ordinance would be negligence *per se. Pennsylvania Co.* v. *Horton* (1892), 132 Ind. 189, 31 N. E. 45; *Louisville, etc., R. Co.* v. *Davis* (1893), 7 Ind. App. 222, 33 N. E. 451; *Shirk* v. *Wabash R. Co.* (1896), 14 Ind. App. 126, 42 N. E. 656. But, in the absence of an ordinance governing the same, whether the running of a train at a given rate of speed alleged to be negligent, in fact constitutes negligence on the part of such railroad company depends upon the conditions, situation and circumstances averred in each particular case. *Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind.

380, 387, 33 N. E. 280, 34 N. E. 218; 1 Elliott, Roads and Sts. (3d ed.) 606; *Lafayette, etc., R. Co.* v. *Adams* (1866), 26 Ind. 76; *Thompson* v. *New York Cent., etc., R. Co.* (1888), 110 N. Y. 636, 17 N. E. 690; *Louisville, etc., R. Co.* v. *Jones* (1886), 108 Ind. 551, 9 N. E. 476. Under these authorities we think the averments of the complaint

2. in this case showing the place, conditions, surroundings, character and frequency of the use of the crossing, sufficient to show that the rate of speed alleged to have been negligent was in fact negligent. We are not unmindful of the holding in the case of *Lake Shore, etc., R. Co.* v. *Barnes* (1906), 166 Ind. 7, 76 N. E. 629, 3 L. R. A. (N. S.) 778, relied upon by appellant. In fact we think our conclusion as to the sufficiency of this charge of the complaint is supported by that case. We quote from that case at page 12. "In cities and towns the conditions are generally different. The crossings are at short intervals, and the houses usually built close together and up to the line of the railroad. These not only obstruct the view of an approaching train, but retard the sound of the warning signals, and, in contrary winds, tend to make the latter misleading and difficult, if not impossible, to hear in time for those upon the crossing to escape a rapidly approaching train. This most excellent reason for the legislative warrant for restricting the speed of trains within the corporate limits of cities and towns does not apply to the country."

As to the second contention of appellant it must be admitted that there was no law that imposed upon appellant, in the first instance, the duty of maintaining an elec-

3. tric gong at the crossing involved, and a failure to place and maintain such gong at such crossing would not have been actionable negligence. We do not think, however, that it necessarily follows from this admission that it was not negligent to maintain and keep a defective gong which gave out a false alarm that was liable to and which,

under the averments of the pleading in question, did in fact interfere with and prevent or in a measure prevent the efficacy of other signals which the law made necessary. Though not required to keep or maintain such electric bell, yet appellant having voluntarily kept and maintained the same, at said crossing in question, the traveling public had a right to rely upon it to the extent of presuming that it would correctly indicate the danger or serve the warning which it was intended that it should give. *Pennsylvania Co.* v. *Stegemeier* (1889), 118 Ind. 305, 20 N. E. 843, 10 Am. St. 136; *Cleveland, etc., R. Co.* v. *Heine* (1902), 28 Ind. App. 163, 62 N. E. 455; *Cleveland, etc., R. Co.* v. *Coffman* (1903), 30 Ind. App. 462, 64 N. E. 233, 66 N. E. 179, and authorities cited.

As to appellant's third contention, it may be conceded that the object of the law in requiring the statutory signals to be given, is to notify travelers on the highway of the approaching train. It follows therefore that if the traveler approaching the crossing knows that a train is approaching and knows such fact in time to stop before crossing and avoid collision or injury, the failure to give such signals should not be treated as the proximate cause of the injury. *Baltimore, etc., R. Co.* v. *Abegglen* (1908), 41 Ind. App. 603, 607, 84 N. E. 566; *Korrady* v. *Lake Shore, etc., R. Co.* (1892), 131 Ind. 261, 263, 264, 29 N. E. 1069; *Baltimore, etc., R. Co.* v. *Musgrave* (1900), 24 Ind. App. 295, 301, 55 N. E. 496; *Indiana, etc., R. Co.* v. *Hammock* (1887), 113 Ind. 1, 4, 14 N. E. 737. The error in appellant's position, upon this ground of the negligence charged against it, as we see it, is not in the propositions of law relied upon, but is in the assumption that the facts averred show that the driver of the hack knew that there was a train approaching in time to have stopped his team before crossing the track. We do not think the facts alleged justify this assumption. The facts alleged do show that the hack driver was told by the occupants of the hack and by

others that a train was coming, but not that he actually knew that such train was coming. On the contrary, the facts pleaded show that the driver disregarded and treated the warning given by the decedent and others, of the approaching train, because he thought they were induced by the gong which he knew had been continually giving a false alarm, the noise of which, according to the averments of the complaint, prevented said driver from hearing the approach of said train. These averments may tend and in fact do emphasize the negligence of the driver of the hack, and if the question were one involving liability for his injuries, or that of the property of the hack owner, a very different and much easier question would be presented.

The failure to give the signals required by statute of a train's approach, is negligence *per se,* and the averments in this complaint of such failure is of itself sufficient 6. to charge negligence on the part of appellant unless such averment is so controlled or modified by other averments as to lose its force and effect. *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 70 N. E. 985; *Pennsylvania Co.* v. *Fertig* (1905), 34 Ind. App. 459, 70 N. E. 834; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 37 N. E. 150, 38 N. E. 594. We do not think the other averments of the complaint in fact show that appellant actually knew of the approach of the train *in time to have avoided the collision.* For the reasons indicated, we are convinced that the averments of the complaint were sufficient to withstand the demurrer.

A more serious question, however, arises on the ruling on the motion for judgment on the answers to interrogatories. But upon this question the appellee has the advantage 7. which requires this court to indulge every presumption in favor of the general verdict and which prevents its overthrow unless this court finds the conflict between such answers and such general verdict to be of such a character as to be irreconcilable on any theory, or upon

any supposable state of facts provable under the issues. *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662, 64 N. E. 92; *Flutter* v. *New York, etc., R. Co.* (1901), 27 Ind. App. 511, 59 N. E. 337; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *Indianapolis, etc., R. Co.* v. *Emmerson* (1913), 52 Ind. App. 403, 98 N. E. 895; *Southern R. Co.* v. *Utz* (1913), 52 Ind. App. 270, 98 N. E. 375.

The particular facts found by the answers to interrogatories upon which appellant specially relies for the overthrow of the general verdict are in substance as follows: The driver of said hack with said decedent crossed said main track with his horses in a trot in front of said train as said train was approaching from the east. About the time said driver entered upon or was about to enter upon said track he checked his horses, as though he was going to stop, and without bringing them to a stop, whipped them rapidly over said main track, clearing the track with said hack and avoiding any collision with either horses or vehicle. Before crossing over said track said driver learned from others of the approach of said train. There was nothing that would have prevented him from stopping his team, or turning his horses to the right or left before driving on said main track in time to have avoided collision with said train. The train as it approached the crossing was running at a speed of 25 miles an hour. Before driving on the main track decedent indicated to the driver that the train was approaching and desired him to stop before driving on the track. Said decedent, as said hack approached said main track occupied one of said seats towards the front end of said hack. "No. 21. Just after passing over said track and while said horses and hack were moving rapidly to the north did said decedent by some means get out or was she thrown out through the door in the rear end of said hack? A. Yes. No. 22. In so escaping from said hack did said decedent fall so that her head or some portion of her body

came in contact with said train, the engine of which by that time had arrived at a point where said hack had crossed over said track? In such fall and in said contract with said train did said decedent receive injuries which caused her death? A. Yes. * * * No. 36. As said train approached said crossing from the east, did it give the whistle signals for said crossing? A. Yes. No.37. As said train approached said crossing did it give the station signal for the station in Andrews? A. Yes. No. 38. As said train approached said crossing was the bell on said engine ringing? A. Yes." It should be remarked in this connection that we have quoted from appellant's interrogatories alone, and only such as present most favorably appellant's contention. Many others propounded by both appellant and appellee, were answered, some of which are apparently in conflict with those quoted. By one of its answers, the jury found that the driver of said hack, did not learn of the approach of said train before driving on the track in time to have stopped until the same passed over the crossing.

It is insisted: (1) That the answers to the interrogatories eliminate the negligence charged in the complaint of failure to give the statutory signals, and speed of the train, and that the appellant was not therefore guilty of any negligence. (2) That the answers show that decedent was guilty of contributory negligence. (3) That there is a variance between the averments of the complaint and the answers to interrogatories in that the jury by its said answers found that the decedent was not killed by collision with the train while on the track as alleged in the complaint, but that "she had passed over the track safely", and was thrown out of the hack by the speedy driving thereof and "in her fall struck the engine which at that time was passing the point on the crossing over which the hack had safely passed."

Taking up out of order the above reasons urged by appellant as sustaining its position that the court erred in overruling said motion, we submit that we find nothing in the

answers to the interrogatories from which this court can say as a matter of law that the decedent was guilty of contributory negligence. In this connection it must be remembered that the negligence of the driver of the hack could be, in no event, charged against the decedent. This is conceded by appellant and settled by authority, and would be so, even though the decedent had been driven in a vehicle of a relative or friend, and not by one occupying toward her the relation of a common carrier. *Miller* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 97, 27 N. E. 339, 25 Am. St. 416; *Chicago, etc., R. Co.* v. *Spilker, supra,* and authorities cited; *Lake Shore, etc., R. Co.* v. *Boyts* (1897), 16 Ind. App. 640, 45 N. E. 812; *Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, 49 N. E. 857; *Indiana Cent. R. Co.* v. *Hudelson* (1859), 13 Ind. 325, 74 Am. Dec. 254. It is only where the facts found by the jury lead to but one inference, that this court will say as a matter of law that the injured party was guilty of contributory negligence. *Baltimore, etc., R. Co.* v. *Walborn* (1891), 127 Ind. 142, 147, 150, 26 N. E. 207. The jury in this case expressly found that the decedent indicated to the driver of the hack before he went upon the track, that the train was approaching, "and desired him to stop." She could scarcely have done more. In any event this finding is enough to prevent this court from saying that the facts found necessarily show the decedent guilty of contributory negligence.

In our opinion there is little merit in appellant's contention that there is a material variance between the facts found and the averments of the complaint as to the manner in which decedent received the injury that resulted in her death. The averments of the complaint in this regard are: "As the wheels of the carriage struck the rails of said railroad said Luella B. was *thereby thrown or caused to fall* from said hack upon said railroad, and said approach-

ing train thereby ran on, *against* or over her body and inflicted injuries from which she immediately died.'' The particular interrogatories and answers thereto upon which appellant bases its contention are those which find in effect that the train did not collide with said horses or with said vehicle; that neither the driver, horses nor vehicle were injured, and the answers to interrogatories Nos. 21 and 22, *supra*. Interrogatory No. 21 is framed in the alternative so that the answer thereto makes it appear that the decedent either got out of the hack or was thrown out, but the jury in their answer to another interrogatory expressly find ''that said hack had just cleared the railroad when decedent *was thrown* from the hack and thereupon struck by the aforesaid train causing injuries resulting in her death.'' The complaint does not aver that the train collided with the hack or that appellee was thrown on the rails of the track. It does aver that when thrown out ''upon said *railroad* said approaching train ran on, against and over her body.'' These averments are sufficiently broad to admit proof that justified the answers to the interrogatories. To hold that there is such material or essential variance between the averments of the complaint and the answers to the interrogatories, as would require a reversal of the judgment below, would be a violation of both the letter and spirit of §§407, 700 Burns 1908, §§398, 658 R. S. 1881.

The most serious and troublesome question presented by appellant is its contention that the answers to interrogatories show that the statutory signals were given and that this being true, the appellant could not be said to be guilty of any negligence which could be said to have in any way contributed to the death of appellee's decedent. Under the issues tendered by the complaint, the hack driver may have testified, and, for the purposes of the question being considered, this court can assume that he did testify in effect that he knew that the electric bell maintained at the crossing in question had been out of repair for several

days prior to, and up to, the time that the decedent was injured; that it was constantly ringing regardless of whether a train was approaching or not; that its ringing made considerable noise and prevented, or materially interfered with, one's hearing the approach of a train; that on the occasion in question when approaching the crossing he listened and heard no approaching train, but heard only the clatter or noise of the electric bell; that he looked, but, on account of the obstruction to his view, saw no approaching train; that the decedent and others warned him that a train was approaching, but he knew that they were relying upon such electric bell and for this reason he discredited and disregarded their warning; that on account of the noise made by such electric bell he failed to hear the approach of said train, and did not know of its approach until his horses were upon the track and it was too late to prevent collision except by going forward; that he then discovered that the nearness and speed of the oncoming train was such as required prompt and extraordinary action to avoid collision; that for this reason he whipped up his horses, and tried to clear the track; that he barely cleared the track with his horses and vehicle, but in doing so the horses, when he struck them, suddenly jerked the hack forward with greatly increased speed, and struck the rails of the track with such force that the decedent was thereby thrown backward and out of the door of the hack; that he would have heeded the warnings of decedent and others telling him of the approach of said train and stopped his hack until such train had passed but for the fact that he knew that such electric bell was out of repair and continually sounding a false alarm, and that he supposed such warnings were induced by and the result of their reliance upon the alarm given by such bell; that but for the excessive speed of the train he would have crossed the track in safety without whipping up his horses and giving his hack the sudden jerk which caused decedent to be thrown out and killed. Many of the facts above assumed were in effect found

by the answers to interrogatories submitted not quoted above. Such facts would by no means have justified the hack driver in his attempt to cross such track, or relieved him or his master from negligence proximately causing the death; but this is not the question which we are called upon to decide. On the contrary, assuming that such facts were proven, this court must determine whether the hack driver's negligence was the sole proximate cause of the death of appellee's decedent, and whether any act of negligence charged against appellant in any way contributed thereto. We do not believe that the assumed facts would justify such a conclusion, but, on the contrary, to our mind, they force the conviction that the hack driver's conduct and act in crossing said track at the time he did was in a measure, at least, influenced and controlled by the alleged negligent acts of the appellant.

Although the negligence of a third person concurs in producing an injury, this alone will not relieve from liability another negligent party whose negligence was the proximate cause of such injury. *Miller* v. *Louisville, etc., R. Co., supra; Rogers* v. *Leyden* (1891), 127 Ind. 50, 53, 26 N. E. 210, and authorities cited.

In this case, under the averments of the complaint, which, for the purposes of this motion must be assumed as proven, the hack driver was the agent of appellant's codefendants to the action below, the owners of the hack line, who were themselves common carriers for hire; and, where two or more joint tort feasors are guilty of negligence proximately contributing to an injury, either, or all of such joint tort feasors may be required to respond in damages therefor, the other elements of liability being shown. *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 535, 87 N. E. 723; *Cleveland, etc., R. Co.* v. *Hilligoss* (1908), 171 Ind. 417, 423, 86 N. E. 485, 131 Am. St. 258; *Indianapolis Traction, etc., Co.* v. *Holtzclaw* (1907), 40 Ind. App. 311, 81 N. E. 1084; *Peru Heating Co.*

v. *Lenhart* (1911), 48 Ind. App. 319, 95 N. E. 680, 682, and authorities there cited.

It is also insisted by appellee that the answers of the jury to the interrogatories are not equivalent to a finding that appellant when approaching the crossing in question gave the signal required by statute at the time and place and in the manner prescribed by such statute, and therefore is not necessarily inconsistent with the general verdict upon such question, which is a finding that such signals were not so given. The statute in question, §5431 Burns 1908, §4020 R. S. 1881, provides that all railroads operating in this State shall have attached to each and every locomotive engine a whistle and a bell and that in approaching a crossing where "such engine *is not less than eighty nor more than one hundred rods from such crossing*" the engineer or person in charge of such engine shall "*sound the whistle on such engine* distinctly three times and *ring the bell* attached to such engine *continuously from the time of sounding such whistle* until such engine shall have fully passed such crossing." The general verdict upon the question under consideration was a finding that the whistle of appellant's engine was not sounded *distinctly three times* when *not less than eighty and no more than one hundred rods from the crossing* in question, and that the bell did not continue to ring from the sounding of the whistle until the crossing was passed by such engine. The answers to interrogatories, *supra,* simply find that as appellant's train approached said crossing, the whistle signal for the same was given. The number of the blasts, or where given, is not specially found. Likewise, said answers find that the bell on said engine was ringing as the train approached said crossing, but it is not found when or where it began ringing, or that it began ringing with the first blast of the whistle.

The statute fixes the time, place and manner of signals to be given as a warning to the traveling public of the approach

of a train at a public crossing over a highway, and it
17. has been held that such signals given only at a time
when so near the crossing as to be unavailable as
notice, does not serve the purpose intended by the statute
and will not relieve the company so giving such signals from
liability. *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind.
522, 51 Am. Rep. 761; *Baltimore, etc., R. Co.* v. *Young*
(1899), 153 Ind. 163, 54 N. E. 791.

We are not entirely free from doubt in our determination
of the question presented by the ruling on this motion, but,
taking the averments of the complaint upon the subject of
appellant's negligence in their entirety, we are constrained
to hold that proof might have been admitted thereunder,
sufficient to sustain the general verdict, notwithstanding the
answers to interrogatories and that the motion for judgment
on said answers was therefore properly overruled.

Judgment affirmed.

## ON PETITION FOR REHEARING.

HOTTEL, J.—Appellant has filed a petition for rehearing
in this case and its counsel in the brief in support thereof
press upon us with such earnestness and sincerity their rea-
sons for believing that the court has committed error in its
original opinion, that we are led to give additional consid-
eration to some of the questions determined therein.

If this were an action by the hack driver, or, if his negli-
gence could be charged against appellee's decedent, or, if,
under the averments of the complaint or the answers to in-
terrogatories, the negligence of such driver could be said to
be the sole proximate cause of the death of the decedent, we
would be persuaded that appellant is right in its contention
that a rehearing should be granted. In our consid-
18. eration of the complaint we were not unmindful of
the rule so earnestly urged by appellant in its original
brief and now again emphasized which required us, in case

of doubt upon the pleading, to construe the same most strongly against the pleader and to indulge against its validity all reasonable inferences not excluded by positive and direct averment. *Shenk* v. *Stahl* (1905), 35 Ind. App. 493, 498, 74 N. E. 538; *Wabash R. Co.* v. *Beedle* (1910), 173 Ind. 437, 445, 90 N. E. 760; *Pond* v. *Sweetser* (1882), 85 Ind. 144; *State, ex rel.,* v. *Castell* (1887), 110 Ind. 174, 187, 11 N. E. 219; *Hays* v. *Hays* (1907), 40 Ind. App. 471, 473, 82 N. E. 90, and authorities cited. It should be remarked, however, in this connection, that this rule when applied to a complaint is applicable to only such averments as are necessary to state the cause of action. When all the necessary and essential averments of a cause of action are directly and positively stated, no *mere inferences of a defense* to such action suggested by any averments contained in such complaint will overcome or defeat the cause of action so stated and render the complaint subject to demurrer. *Cole* v. *Searfoss* (1912), 49 Ind. App. 334, 97 N. E. 345; *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822.

In this case it is urged that the complaint nowhere charges that the decedent or the driver of the hack was without fault, or that the decedent or the hackman did not see the train. Contributory negligence as appellant well understands, is now a defense and need not be negatived by the complaint. Granting that the appellant's contention that the hack driver could have seen, and, in fact, did see the train just before he attempted to cross the track, is correct, this would not show the decedent guilty of any contributory negligence but would only show the hack driver guilty of such negligence. The fact that the hack driver's negligence cannot be attributed to the decedent, is well settled by the authorities cited in the original opinion. It is equally well settled that such negligence of the hack driver, if merely contributory, will not relieve appellant from liability for its negligence. It is clear

from the averments of this complaint that the negligent acts charged against appellant influenced the acts and conduct of the hack driver and caused him to do and act as he did, and under such circumstances his acts, though negligent and contributing to the proximate cause of the injuries resulting in the death of appellee's decedent, would not relieve appellant from liability but would only have the effect of making the other common carrier by whom such hack driver was employed and in whose hack such decedent was a passenger, also liable as a joint tort feasor. What we have said in the discussion of the complaint is equally applicable to the question presented by the motion for judgment in appellant's favor on the answers to interrogatories.

The motion for rehearing is therefore overruled.

NOTE.—Reported in 99 N. E. 126; 100 N. E. 383. See, also, under (1) 33 Cyc. 971; (2) 33 Cyc. 1057; (3) 33 Cyc. 942; (4) 33 Cyc. 1045; (5) 33 Cyc. 1042, 1053; (6) 33 Cyc. 967, 1058; (7) 38 Cyc. 1928; (8, 16) 33 Cyc. 1142; (9) 33 Cyc. 984, 1015; (10) 29 Cyc. 634; (11) 33 Cyc. 1142; 38 Cyc. 1925; (12) 33 Cyc. 987; (13) 29 Cyc. 496; (14) 3 Cyc. 315, 316; (15) 29 Cyc. 487; 38 Cyc. 483; (17) 33 Cyc. 958; (18) 31 Cyc. 78; (19) 31 Cyc. 109, 288; (20) 29 Cyc. 575; (21) 33 Cyc. 1015. As to speed of train as evidence of negligence, see 53 Am. Rep. 52. As to the care a railroad company must exercise at highway crossings, see 44 Am. Rep. 470. As to imputing hack driver's negligence to the person inside, see 110 Am. St. 291; 8. L. R. A. (N. S.) 597. As to duty of highway traveler to keep open his eyes and ears at railroad crossings, see 90 Am. Dec. 780. As to joint and several liability in cases of concurrent negligence, see 16 Am. St. 250. For a discussion of the speed of a railroad train as negligence in the absence of a prohibitory statute, see 7 Ann. Cas. 988.